303 F.3d 212
 Mordechai GURARY, Plaintiff-Appellant-Cross-Appellee,
v.
NU-TECH BIO-MED, INC., Defendant-Appellee-Cross-Appellant,
Isaac Winehouse, d/b/a Wall & Broad Equities, Defendant.
 Docket No. 01-7969(L).
 Docket No. 01-9000(XAP).
 United States Court of Appeals, Second Circuit.
 Argued: May 16, 2002.
 Decided: August 23, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Robert J. Tolchin, Jaroslawicz & Jaros, New York, NY, for Plaintiff-Appellant-Cross-Appellee.
 Martin E. Karlinsky, Rosenman & Colin, LLP, New York, NY, for Defendant-Appellee-Cross-Appellant.
 Before: WALKER, WINTER, and CALABRESI, Circuit Judges.
 Chief Judge JOHN M. WALKER, Jr., concurs in a separate opinion.
 CALABRESI, Circuit Judge.
 
 
 1
 Responding to what it perceived to be an unwillingness on the part of courts to impose discretionary sanctions on parties who brought abusive securities fraud lawsuits, Congress passed Section 21D(c) of the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4(c). See S.Rep. No. 104-98, at 13 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 692. While the mischief that Congress was addressing is clear, the statutory language Congress employed is not.
 
 
 2
 The PSLRA dictates sanctions for frivolous securities fraud complaints and emphasizes the need not only to deter such abusive lawsuits, but also to compensate fully victims of this kind of abusive litigation. It requires district courts overseeing securities fraud suits to make specific findings, upon final adjudication of the action, as to whether all parties and all attorneys have complied with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure. § 78u-4(c)(1). If the court determines that a violation has occurred, the imposition of sanctions is mandatory. § 78u-4(c)(2). The PSLRA further establishes a presumption that, "for substantial failure of any complaint to comply with any requirement" of Rule 11(b), the award shall be the full amount of the reasonable attorneys' fees and costs.[1] § 78u-4(c)(3)(A) (emphasis added). Under the statute, this presumption may be rebutted only upon proof that "the violation of [Rule 11(b)] was de minimis" or that the sanctions "will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed." § 78u-4(c)(3)(B).
 
 
 3
 On their own terms these provisions present problems. Thus, one might well read the requirement that the violation be a "substantial failure," for purposes of applying the presumption of an award of full fees and costs, to mean that the violation must not be de minimis. But such a reading would make hash of the statute's subsequent provision that a party may rebut this presumption by showing that the violation was de minimis. We must, therefore, read the requirement of a "substantial failure" to mean something else. But what? The matter is made more complex by the fact that the words "substantial failure" and "de minimis" give no guidance as to the proper extent of mandated sanctions when frivolous counts or allegations are part of a suit in which some of the other counts or allegations are not only not frivolous, but may actually have merit. The present case requires us to address these matters.
 
 
 4
 Attorney David Jaroslawicz and his law firm, Jaroslawicz & Jaros, appeal a judgment from the United States District Court for the Southern District of New York (Stanton, J.), imposing sanctions on Jaroslawicz and his law firm pursuant to Rule 11(b) and § 21D(c) of the PSLRA in the amount of $62,556.28, or approximately one-half of defendant Nu-Tech's costs and attorneys' fees. The sanctions arose out of an action brought by Gurary, a purchaser of common stock in Nu-Tech, in which Gurary alleged securities fraud violations by Nu-Tech and Isaac Winehouse. Gurary claimed that Winehouse was the leader of a "cartel" that purchased convertible preferred stock and manipulated stock prices by short selling in violation of Section 10b of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), as well as § 349 of the General Business Law of the State of New York. According to Gurary's various theories of recovery, Nu-Tech knew of the short selling and committed fraud by concealing material information and providing misinformation in violation of Rule 10b-5.
 
 
 5
 The district court dismissed the complaint and we affirmed that dismissal. Gurary v. Winehouse ("Gurary I"), 190 F.3d 37 (2d Cir.1999). We subsequently directed the imposition of sanctions with respect to two of Gurary's four claims against Nu-Tech, Gurary v. Winehouse ("Gurary II"), 235 F.3d 792 (2d Cir.2000). On remand, the district court ordered sanctions against attorney Jaroslawicz and his firm in an amount equal to approximately one-half of Nu-Tech's attorneys' fees and costs in the action. Before us, Jaroslawicz challenges several aspects of the district court's sanctions ruling. At the same time, Nu-Tech claims, in a cross-appeal, that the court committed legal error by not imposing sanctions equal to all of Nu-Tech's costs and fees.
 
 Background
 
 6
 In his securities lawsuit, Gurary alleged that in November of 1996 Nu-Tech privately issued 14,000 shares of "Series A Convertible Preferred Stock" for a total price of $14 million. Gurary claimed that Winehouse and his cartel arranged to buy a large part of the Convertible Stock in the name of third parties. The Winehouse cartel then allegedly began selling Nu-Tech common stock short, using various accounts to conceal the identity of its members. It could sell short in relative safety because of its ownership of the Convertible Preferred Stocks. According to Gurary, the cartel's purpose was to manipulate the market and drive down the price of Nu-Tech shares.
 
 
 7
 In his complaint, Gurary states that on four occasions he purchased shares of Nu-Tech common: (1) 1,000 shares on October 31, 1996, for $14.60 per share; (2) 5,500 shares on November 7, 1996, for $15.50; (3) 1,000 shares on December 24, 1996, for $11.75; and (4) 8,350 shares on February 18, 1997, for $11.57. In December 1996, after Gurary's first two purchases, the stock price began to decline, presumably as a result of the short selling. Gurary further alleges that Marvin Feigenbaum, chairman of Nu-Tech, assured Gurary that Feigenbaum had informed Winehouse that Nu-Tech would refuse to register any stock that would be converted from Convertible Preferred Stock to common stock unless Winehouse stopped shorting the common. Gurary states that he made his third purchase of common stock on December 24, 1996 based upon Feigenbaum's assurances.
 
 
 8
 Gurary continues that upon learning that Winehouse and his associates had persisted in shorting the stock, Gurary again spoke with Feigenbaum on February 18, 1997. Feigenbaum explained that he had met with Winehouse's group and offered to repurchase their stock at cost plus ten percent if the group would cease its activities. Winehouse rejected the offer, but Feigenbaum reemphasized that Nu-Tech would refuse to register the short sellers' shares. Apparently comforted by this information, Gurary made his fourth purchase later that same day.
 
 
 9
 On March 12, 1997, Feigenbaum made an unsuccessful attempt to negotiate an agreement with Winehouse that would end the short selling. The Nu-Tech stock dropped approximately $6 a share over the next two days. Nu-Tech issued a press release on March 14, 1997, which stated that the price decline could be attributed to "possible sales by shareholders," but Nu-Tech did not mention the discussions with Winehouse. During a conversation a few days later, Winehouse admitted to Gurary that he deliberately had shorted the stock to drive prices down and that he intended to continue doing so.
 
 
 10
 On May 23, 1997, Gurary began this action against Winehouse and Nu-Tech. Gurary charged Winehouse with manipulation of the common stock in violation of Rule 10b-5, by purchasing the Convertible Preferred and shorting the common. He alleged that Nu-Tech had engaged in fraud by concealing material information and providing misinformation in violation of Rule 10b-5.[2] And he asserted that both of the defendants' conduct constituted fraudulent business practice in violation of § 349 of the General Business Law of the State of New York.
 
 
 11
 The district court granted the defendants' motion for summary judgment on the federal claims, but implicitly denied their motion for sanctions pursuant to Rule 11(b) and the PSLRA. Gurary v. Winehouse, 1998 WL 54641, at *2-3 (S.D.N.Y. Feb. 10, 1998). It also declined to exercise jurisdiction over the state law claim in light of the disposition of the federal allegations. Id. at *3. Gurary appealed and Nu-Tech cross-appealed. We affirmed the dismissal of the federal as well as the state claims, and vacated and remanded with respect to the denial of sanctions because "the district court [had] made no findings regarding compliance with Rule 11(b)" as mandated by the PSLRA. Gurary I, 190 F.3d at 39, 47.
 
 
 12
 On remand, the district court determined that sanctions were not warranted because Gurary could colorably argue that an extension of existing case law supported his Rule 10b-5 causes of action. Gurary v. Winehouse, 2000 WL 20706, at *1 (S.D.N.Y. Jan.12, 2000). Only Nu-Tech appealed this denial.
 
 
 13
 In Gurary II, the district court's ruling was affirmed in part, and vacated and remanded in part. Gurary II, 235 F.3d at 797. We held that sanctions were warranted because the claims against Nu-Tech, based upon Gurary's first two purchases (October 31 and November 6, 1996), were frivolous. We also held, however, that sanctions could not be grounded on the nonfrivolous, but meritless, claims (also against Nu-Tech) involving the last two purchases (December 24, 1996 and February 18, 1997). Our opinion concluded that "[b]ased upon the plain language of section 10(b) and well-settled case law, Gurary's October 31, 1996 purchase could not under any circumstances give rise to a Rule 10b-5 cause of action because that purchase occurred before any alleged deception began, and therefore could not be in connection with the purchase or sale of a security" as required by the statute. Id. at 799. The November 7, 1996 purchase similarly failed to state a colorable claim because the short selling scheme, which began November 6, 1996, had actually depressed the price of the common stock, to Gurary's benefit. Id. These frivolous claims were, therefore, sanctionable pursuant to the PSLRA and Rule 11(b).
 
 
 14
 With respect to the claims based upon the last two purchases, we held that if the district court had afforded Gurary the opportunity to amend his complaint, as he requested, "Gurary could have asserted a cognizable claim under Rule 10b-5." Id. at 801-02. We noted that in his original complaint and affidavits Gurary had "failed to adequately plead the requisite reliance on false statements made by Feigenbaum with scienter." Id. at 801; see also 17 C.F.R. § 240.10b-5; Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir.2000) ("[P]laintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on the defendant's action caused [his] injury.").
 
 
 15
 This failure to comply with the PSLRA's heightened pleading requirements did not, however, necessarily result in a Rule 11 violation. In opposition to the motion to dismiss, Jaroslawicz, as mentioned above, had requested the opportunity to amend the complaint. The district court implicitly denied this request by granting summary judgment for the defendants. Gurary did not challenge the denial. But on appeal from the dismissal of his complaint Gurary, for the first time, asserted the theory that Feigenbaum's fraudulent statements had been made with malice and that Gurary had relied on them in making his last two purchases. Accordingly, we concluded that "[a]lthough Gurary's claim may not have survived summary judgment even with further discovery because of the inherent difficulty in establishing the subjective intent of Feigenbaum, ... Gurary's failure to sufficiently plead the necessary elements of a cognizable 10b-5 claim does not warrant sanctions under the PSLRA," since losing, though not frivolous, claims could have been made by amending the complaint with respect to these two purchases. Id. at 802. We then remanded the case to the district court to impose appropriate sanctions pursuant to the PSLRA for the claims based upon the first two purchases.
 
 
 16
 The district court, on this remand, stated that the "substantial failure of Gurary's complaint to comply with Fed.R.Civ.P. 11(b) invoked the presumption required by" the PSLRA. Gurary v. Winehouse, 153 F.Supp.2d 489, 491 (S.D.N.Y.2001). The court further noted that "when the failure to comply with Rule 11 is substantial, the whole costs and attorneys' fees of the adversary are awarded as the sanction, unless plaintiff's attorney proves that the burden on him will be unreasonable and unjust, or that the violation was de minimis." Id. (footnote omitted).
 
 
 17
 Relying upon our decision in Simon DeBartolo Group v. Richard E. Jacobs Group, Inc., 186 F.3d 157 (2d Cir.1999), the lower court then found that the presumptive sanctions would impose an unreasonable burden. Gurary, 153 F.Supp.2d at 493. The court reasoned that, because two out of the four claims were potentially nonfrivolous, "to impose the whole costs of the case on [a] plaintiff would in the statutory language `impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed.'" Id. at 492-93 (quoting § 78u-4(c)(B)(i)). Although it found the presumption rebutted because it would create an unreasonable burden, the court rejected Gurary's contention that the violation was de minimis. Equating the "substantial failure" analysis with the de minimis inquiry, the court noted that "[a]s the Court of Appeals made clear, the violation was substantial," and, hence, it could not be de minimis. Id. at 493. The court assessed sanctions upon Jaroslawicz, Gurary's attorney, and his firm in the amount equal to approximately one-half of the fees and costs — including the expenses associated with the sanctions application itself — incurred in the entire action. Id.
 
 
 18
 On appeal, Jaroslawicz argues that the district court abused its discretion because, if sanctions are imposed, they should be limited to the fees and costs actually borne as a result of the frivolous claims rather than be charged at one-half of the total expenses. He also contends that the district court erred by including in the award the legal fees and costs for work performed for the sanctions application itself. Nu-Tech cross-appeals, claiming that, given the district court's finding of a substantial violation of Rule 11, Jaroslawicz's evidence was insufficient to rebut the PSLRA's presumption that full fees and costs were the proper sanction amount. According to Nu-Tech, the district court, therefore, exceeded its authority under the statute in reducing the award.
 
 Discussion
 
 19
 We review the district court's conclusions of law de novo, Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir.2002), and its imposition of sanctions under the PSLRA and Rule 11 for abuse of discretion, Simon DeBartolo, 186 F.3d at 167.
 
 
 20
 The language of the PSLRA does not make clear whether a complaint containing both frivolous and nonfrivolous allegations triggers the statutory presumption, and, if so, whether the presence of nonfrivolous allegations, by itself, rebuts that presumption by constituting evidence either that the violation is de minimis or that the assessment of full sanctions is an unreasonable and unjust burden. After examining the meaning of "substantial failure," "de minimis," and "unreasonable burden" in the context of complaints involving both frivolous and nonfrivolous charges, we hold that, in the circumstances of this case, the violation was substantial, and that the plaintiff failed to rebut the presumption that full compensation is the proper sanction.
 
 
 21
 I. The Meaning of the PSLRA Sanction Provisions
 
 A. The Underlying Purpose of the PSLRA
 
 22
 As we stated in Simon DeBartolo, "[r]ecognizing what it termed `the need to reduce significantly the filing of meritless securities lawsuits without hindering the ability of victims of fraud to pursue legitimate claims,' and commenting that the `[e]xisting Rule 11 has not deterred abusive securities litigation,' the 104th Congress included in the [PSLRA] a measure intended to put `teeth' in Rule 11." Id. at 166-67 (quoting H.R. Conf. Rep. No. 104-369 (1995), at 39, reprinted in 1995 U.S.C.C.A.N. 730, 738). The PSLRA's sanction regime was one of several provisions designed to reduce the economic incentives for bringing these actions.
 
 
 23
 Congress was concerned about the failure of courts to impose sanctions pursuant to Rule 11, even in cases in which penalties were warranted. Accordingly, the PSLRA required (a) mandatory findings regarding compliance with Rule 11(b), § 78u-4(c)(1) ("In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by... each attorney representing any party with each requirement of [Rule 11(b)] as to any complaint ...."), and (b) mandatory sanctions whenever any portion of the complaint violated Rule 11, § 78u-4(c)(2) ("If the court makes a finding under paragraph (1) that a[n] ... attorney violated any requirement of [Rule 11(b)] as to any complaint ..., the court shall impose sanctions on such ... attorney in accordance with [Rule 11(b)].").
 
 
 24
 Congress was also troubled by the fact that under existing Rule 11 practice, when a court did award Rule 11 sanctions, the award was "generally insufficient to make whole the victim of a Rule 11 violation; the amount of the sanction [was] limited to an amount that the court deem[ed] sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the costs imposed on the victim of the violation." H. Conf. Rep. No. 104-349, at 39, reprinted in 1995 U.S.C.C.A.N. 738. This concern led to the establishment of the presumption in the PSLRA that full fees and costs were the proper sanction for a violation of Rule 11.
 
 
 25
 The mandatory and broad nature of the presumption, however, was tempered by limiting it only to those cases in which the failure to comply with Rule 11 was "substantial." During the drafting of the legislation, the addition of the qualifier "substantial" was suggested by Judge Anthony Scirica of the United States Court of Appeals for the Third Circuit as a means of indicating that the presumption was reserved for only a "serious offense — filing an unfounded action." See 141 Cong. Rec. S19044, S19055 (Dec. 21, 1995) (Letter to the Senate Committee on Banking, Housing and Urban Affairs from Judge Anthony J. Scirica). But Judge Scirica further noted that, without an additional modification to indicate the consequences of a small offense, "a gap is left in the statutory scheme." Id. And while Congress adopted Judge Scirica's "substantial failure" language, the legislators failed to address his second concern and did not define clearly what was meant by a "substantial failure."
 
 
 26
 This failure left uncertain the applicability of the PSLRA's presumption in cases in which the security fraud complaint presents both frivolous and nonfrivolous claims, a problem that Congress did not seem to have in mind. Thus, the legislative history of the PSLRA focused for the most part on abusive securities litigation without considering the possibility that these suits might also contain nonfrivolous claims. The only acknowledgment of this issue is the congressional statement that when one claim in a twenty-count complaint is frivolous, the violation is de minimis and, hence, the presumption is rebutted. See H.R. Conf. Rep. No. 104-349, at 39-40, reprinted in 1995 U.S.C.C.A.N. 738-39.
 
 
 27
 A securities complaint may, however, present frivolous claims joined with nonfrivolous claims in a wide variety of ways, including the combination of frivolous claims with (1) valid, winning claims; (2) claims lost before a jury but which are meritorious enough to survive summary dismissal; (3) claims that, though properly dismissed at summary judgment because capable of resolution as a matter of law, presented novel legal issues that could well have gone in the plaintiff's favor; and (4) summarily dismissed claims that, while not legally frivolous, lack any merit. The statutory language leaves unclear which of these situations create a substantial violation of Rule 11. It is possible that in certain of these scenarios a complaint is not, in Judge Scirica's language, "unfounded," and, hence, should not be deemed a substantial violation. In others, instead, the violation may well remain substantial despite the presence of nonfrivolous claims. Further, the PSLRA's language does not indicate whether the mere presence of a nonfrivolous claim can suffice either to make even a substantial violation de minimis or to make the imposition of full sanctions unreasonable and unjust, thereby rebutting the statutory violation.
 
 B. De Minimis Violations
 
 28
 Appellant Jaroslawicz argues that a complaint containing any nonfrivolous allegation (a) is not a substantial violation that gives rise to the PSLRA's presumption, and, (b) even if it were, falls both within the de minimis and the unreasonable burden defenses. But to accept these contentions would permit the very mischief that Congress manifestly intended to prohibit. Plaintiffs could avoid mandatory sanctions, and return to the prior discretionary regime, simply by including one colorable claim amid a myriad of abusive allegations.
 
 
 29
 Accepting Jaroslawicz's definition of de minimis, moreover, also runs counter to unusually clear legislative history. Once a substantial violation has been found and the presumption established, the Conference Committee wrote:
 
 
 30
 [the presumption] does not mean that a party who is sanctioned for only a partial failure of the complaint under Rule 11, such as one count out of a 20-count complaint, must pay for all of the attorney's fees and costs associated with the action. The Conference Committee expects that courts will grant relief from the presumption where a de minimis violation of the Rule has occurred.
 
 
 31
 H.R. Conf. Rep. No. 104-369 at 39-40, reprinted in 1995 U.S.C.C.A.N. at 738-39.
 
 C. Unreasonable Burden
 
 32
 Jaroslawicz contends that even if the de minimis clause cannot be read as limiting sanctions in complaints that contain any nonfrivolous allegations, the unreasonable burden prong of the PSLRA's rebuttal provision should be understood to mean that the entire fees and costs ought not to be granted when only part of the complaint was frivolous. But, as indicated above, this, as much or more than an expansive reading of de minimis, would negate the congressional intent underlying the PSLRA's sanction scheme. For the presence of any nonfrivolous claim would again mean that, rather than being bound by the mandates of the PSLRA, courts would be free to engage in the ordinary Rule 11 analysis, which Congress found too often resulted in the failure to compensate fully victims of abusive securities litigation.
 
 
 33
 Moreover, both the ordinary meaning of "unreasonable burden" and its context in the PSLRA indicate that the statute's unreasonable burden prong requires the sanctioned party to offer, through financial statements or other proof, evidence that the award is unreasonable and unjust, given the party's economic or other like status. Thus, the district court is required to compare the burden on the sanctioned party to the burden placed on the victim of the litigation, given the victim's financial or similar status. See § 78u-4(c)(3)(B) ("The presumption ... may be rebutted only upon proof ... that (I) the award of attorneys' fees and other expenses will impose an unreasonable burden on that ... attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the [victim of the abusive litigation] ...."); see also S.Rep. No. 104-98, at 14, reprinted in 1995 U.S.C.C.A.N. 693 (noting that under this prong, courts should "take into account the relevant circumstances of each case" as proven by the parties).
 
 
 34
 We conclude that, once a substantial violation is found, the existence of some nonfrivolous claims does not suffice to rebut the statutory presumption on the ground that full sanctions would be an unreasonable and unjust burden.
 
 D. Substantial Violation
 
 35
 All this returns us to the statutory requirement that, in making the mandatory findings under the PSLRA, the district court should initially determine whether or not a violation of Rule 11 occurred, and if it has, whether the failure to comply with Rule 11 was substantial. And, as we have emphasized, only if the failure is substantial does the presumption of full sanctions arise. What then is a substantial violation?
 
 
 36
 Nu-Tech argues that a substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive. Under this interpretation, the district court must examine the qualitative substance of the nonfrivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves.
 
 
 37
 There is much to be said for this reading of the statute, and we adopt it today. First, it gives a meaning to "substantial failure" that is not simply the opposite of de minimis. It thereby avoids what would be a paradoxical result — that the presumption is rebutted by evidence that the presumption was inapplicable in the first instance. Second, it is fully consistent with Congress's desire to punish abusive litigation severely, without discouraging, to any increased degree, parties who wish to present serious, even if ultimately unsuccessful, claims. See H.R. Conf. Rep. No. 104-369, at 39, reprinted in U.S.C.C.A.N. 738. Third, it accords with our prior holdings.
 
 
 38
 Thus, in Simon DeBartolo, where a nonfrivolous claim that presented a novel legal argument was joined to a single frivolous claim, we remanded for consideration of whether the violation was or was not substantial. Under such circumstances, we found that the rebuttable presumption requiring full costs might well not come into play. The nonfrivolous claim in Simon DeBartolo involved only questions of law and, hence, was subject to summary dismissal. But the legal questions raised were legitimate and could well have been decided in favor of the plaintiff. See Simon DeBartolo, 186 F.3d at 178; see also Polar Int'l Brokerage Corp. v. Reeve, 120 F.Supp.2d 267, 270-71 & n. 7 (S.D.N.Y. 2000), aff'd sub nom. Corroon v. Reeve, 258 F.3d 86 (2d Cir.2001). The suit as a whole might, therefore, not be abusive and, accordingly, the presumption of full sanctions might be inappropriate.
 
 
 39
 As was implicit in Simon DeBartolo, however, in such cases, even if no substantial failure existed under the PSLRA, partial sanctions might still be assessable under ordinary Rule 11 standards to punish not the bringing of the whole suit, but only of the frivolous claim. In contrast, if summary judgment had been granted because the nonfrivolous claims were altogether meritless, and presented no plausible novel legal or factual contentions, the complaint as a whole would properly be viewed as prima facie abusive and, hence, as substantially failing to comply with Rule 11. Such a complaint would not avoid the statutory presumption that a penalty of full fees and costs is appropriate.
 
 
 40
 * * * *
 
 
 41
 To summarize: in cases of this sort, the district court must first determine whether frivolous claims in violation of Rule 11 have been brought. If they have, the court must examine whether nonfrivolous claims have been joined and, if so, whether these claims — whatever their number — are of a quality sufficient to make the suit as a whole nonabusive and the Rule 11 violation not substantial. If no such weighty nonfrivolous claims are attached, the statutory presumption applies. The court must then determine whether the violation was de minimis, for, if it was, the presumption is rebutted.[3] Alternatively, financial statements or other relevant evidence may establish that the full sanction award unjustly creates an unreasonable burden on the sanctioned party and that a partial award would not "impose a greater burden on the party in whose favor sanctions are to be imposed." § 78u-4(c)(3)(B)(i). In this situation, too, the presumption is rebutted and full sanctions are not warranted.
 
 
 42
 This framework is, we believe, consistent with the statutory language, with Congress's intention that the PSLRA "impose upon courts the affirmative duty to scrutinize filings closely" when imposing sanctions for any substantial violation of Rule 11(b), H.R. Conf. Rep. No. 104-369 at 40, reprinted in 1995 U.S.C.C.A.N. 739; see also S.Rep. No. 104-98 at 14, reprinted in 1995 U.S.C.C.A.N. 693, and with the legislature's desire to sanction abusive litigations severely, while not discouraging suits that have potential merit. It is also consistent with the jurisprudence of this Circuit.
 
 II. The Present Sanctions
 
 43
 Applying this statutory analysis to the present case, we find no plausible, nonfrivolous allegation in the complaint against Nu-Tech that saves it from being rightly viewed as an abusive securities lawsuit.[4] In doing so, we do not need to decide precisely how strong the nonfrivolous counts or arguments must be in order to limit sanctions only to the frivolous portions of the complaint. It may be that the presence of claims that survive summary judgment is sufficient. It may be that more is needed. But less may also be enough when, as in Simon DeBartolo, the only nonfrivolous claim was a question of law, and so summary judgment was appropriate, but that claim was deemed to be a novel and plausible one.
 
 
 44
 None of that need be decided today. In the case before us, the claims grounded on the first two purchases were frivolous, while the Rule 10b-5 causes of action based upon the last two purchases — though not frivolous — patently lacked merit. The denial of an opportunity to amend the complaint precluded their being deemed frivolous, and barred imposition of Rule 11 sanctions against Jaroslawicz on their account. Because we found it possible that Jaroslawicz could have raised a potentially cognizable claim under the facts of the case with respect to these two claims, we declined to deem them abusive in themselves. But the legal strength, or lack thereof, of the possibly cognizable claim that was not presented in the complaint, and that was itself unlikely to succeed on the merits, cannot suffice to relieve the present complaint from being an unfounded action as a whole. See Gurary I, 190 F.3d at 44; cf. Gurary II, 235 F.3d at 800 (noting that Gurary misconstrued our holding in Simon DeBartolo, in which we found that the plaintiff's 10b-5 action was not frivolous because, unlike Gurary's 10b-5 claims, the existing allegations and facts in the Simon DeBartolo's plaintiff's complaint supported each element of a 10b-5 cause of action). It follows that the complaint substantially violated Rule 11 and that the PSLRA presumption applied.[5]
 
 
 45
 Jaroslawicz, moreover, has not made out the rebuttal defenses. He argues that his violation was de minimis because two out of the four allegations were deemed nonfrivolous. We need not specify precisely how minimal the frivolous components of a suit must be, in themselves or perhaps in relation to the other parties' conduct, to constitute only a de minimis violation. The legislative history of the PSLRA makes clear that two claims out of four, without any other possible saving grace, is not enough. The violation in the present case was manifestly not de minimis.
 
 
 46
 Jaroslawicz also argues that the sanctions should be reduced because he recently contracted a disabling disease and operates a small law firm. In the view of the district court, these "facts" — because Jaroslawicz refused to submit financial statements, medical bills, and other documents which would allow the court to assess the impact of his health problems — did not establish that the sanction would create an unreasonable burden. On appeal, Jaroslawicz argues that he should not have to endure an invasion of his privacy in order to receive relief from the burden created by the sanctions. But, once the presumption applies, Jaroslawicz bears precisely that burden, and he must be willing to offer some financial or other like statements, reflecting the claimed impact of his illness and the consequences of imposing the sanctions award, if that is to be the basis of his rebuttal. This he has not done.
 
 
 47
 III. Recovery of Expenses Incurred in Seeking the Sanctions
 
 
 48
 One final issue requires attention. In the present appeal, Jaroslawicz argues, for the first time, that the district court erred by including in the award the legal fees and costs incurred by Nu-Tech as a result of the sanctions application itself. These include the expenses for work related to the three decisions issued below as well as the two earlier proceedings in this Court.
 
 
 49
 Unless manifest injustice will result from refusing to consider the newly raised issue, it is not properly before this panel. Mycak v. Honeywell, 953 F.2d 798, 803 (2d Cir.1992); see also Gurary I, 190 F.3d at 44. If Jaroslawicz were correct, the sanction award would be reduced by approximately $28,000. In light of his multiple opportunities to raise the issue previously, and the limited monetary difference, the point Jaroslawicz now advances does not raise concerns of manifest injustice.
 
 
 50
 Even if we were to consider the merits of this claim, it is unlikely that Jaroslawicz would prevail. We are remanding for imposition of sanctions pursuant to subsection (c)(3)(A)(ii), which states that under the statutory presumption, the sanction shall be the "reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis added). As a result, the statutory language can support a reading that permits the fees and expenses incurred in pursuing the sanctions to be included in the award. As Nu-Tech argues, the present lengthy litigation exemplifies how costly pursuing sanctions may become, particularly in the case of strike suits. Were sanctions limited to recovering only the costs and fees for the initial action, which is often dismissed on the merits early in the litigation process, many defendants would fail to submit sanctions applications or to pursue them on appeal.
 
 
 51
 Such a result would undermine the PSLRA's statutory purpose. Unlike the fee-shifting provisions in other statutes that are there to promote litigation, see, e.g., 42 U.S.C. §§ 1988(b), 2000e 5(k), Congress passed the statutory presumption in the PSLRA sanctions scheme in order to encourage "defendants to fight abusive claims," see S.Rep. No. 104-98, at 4, reprinted in 1995 U.S.C.C.A.N. 683, and to compensate wholly victims of frivolous litigation, see H.R. Conf. Rep. No. 104-369, at 39, reprinted in 1995 U.S.C.C.A.N. 738 ("Finally, courts have been unable to apply Rule 11 to the complaint in such a way that the victim of the ensuing lawsuit is compensated for all attorneys' fees and costs incurred in the entire action." (emphasis added)). The strict statutory presumption against plaintiffs is limited to those securities fraud cases that are unfounded and abusive. Once the presumption is triggered and is not rebutted, however, it seems most likely that Congress meant for the defendant to receive fees and costs incurred in seeking sanctions pursuant to § 78u-4(c)(3)(A)(ii), including all reasonable expenses related to appellate proceedings.[6]
 
 Conclusion
 
 52
 We hold that Jaroslawicz's complaint, which contains frivolous claims that were summarily dismissed and no claims of such merit as to make his suit as a whole nonabusive, subjects him to full sanctions, including appellate expenses. We hold further that the presence of some nonfrivolous claims in an otherwise frivolous complaint is not sufficient, standing alone, to establish that either the violation of Rule 11 was de minimis or that the sanctions would create an unreasonable burden, for purposes of overcoming the statutory presumption of the PSLRA.
 
 
 53
 The judgment of the district court is, therefore, VACATED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Rule 11(b) states, in relevant part, that:
 By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
 (1) it is not being presented for any improper purpose ...
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
 (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....
 Fed.R.Civ.P. 11(b).
 
 
 [2]
 It is only this federal claim, by Gurary against Nu-Tech, that is relevant to the appeal now before us
 
 
 [3]
 We do not today need to consider what suffices to rebut the presumption under the rubric of de minimis since, as is discussed below, a de minimis finding is out of the question in this case. It is enough to say that de minimis must mean something different from "not substantial," in the sense above described. It might, for instance, refer to a minor Rule 11-violative procedural flaw in a suit that, though not in itself otherwise abusive, has no saving merit. Moreover, depending on how stringently the concept of substantiality is ultimately defined in the cases, it is even conceivable, if of, say, twenty counts, one violates Rule 11 while nineteen do not (but are of little or no worth), that a court would deem the violation substantial and yet, echoing the PSLRA's legislative history, find the violation de minimis. And, de minimis could perhaps mean what the concurrer's highly imaginative suggestion has it mean — even though we find it hard to discern a basis for that reading in the text or history of the statute. Finally, one should not exclude the possibility that the seeming tension between substantial and de minimis is just the result of a drafting glitch that occurred because the de minimis defense had to be included for use in cases involving § 78u-4(3)(A)(i)
 The point, though, is that to decide the case before us while making sense of the statute's language and history and cohering with our prior ruling in DeBartolo: a) we must give some meaning to "substantial," b) we need not, and hence ought not, do more with the meaning of de minimis than say that it must signify something other than just the opposite of "substantial," and c) we should, in order to show that the "de minimis" defense does have a function in the statute, suggest various things that Congress might have intended by the term, leaving for specific cases that raise the issue to decide which meanings would be covered. To do more with "de minimis" is to engage in unnecessary, and hence undesirable, speculation. To do less, with respect to the meaning of "substantial" and its relation to de minimis, is to fail to do what is required to decide this case consistently with our prior decision and the statute's text and context.
 
 
 [4]
 We note that the original complaint included a count brought singly against Winehouse. That count was summarily dismissed, but sanctions with respect to it were denied by the district court and Winehouse did not appeal that denial. Jaroslawicz has at no point in this litigation argued that the presence of the count against Winehouse is sufficient to save his claims against Nu-Tech from being deemed abusive and subject to the PSLRA sanctions. Accordingly, we take no position on whether, in appropriate circumstances, the presence of a nonfrivolous claim against one defendant might keep frivolous claims against another defendant from being viewed as a substantial violation of the PSLRA
 
 
 [5]
 In dismissing Gurary's state law claim without prejudice, the district court did not make a specific factual finding with respect to whether this nonfederal allegation in the complaint was frivolous. Because Jaroslawicz has not raised before this court the argument that his state law allegation suffices to make the complaintas a whole nonabusive, we need not consider this possible contention. See Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 142 (2d Cir.2000). Accordingly, we decline to decide whether the presence of a state law claim, if it has sufficient merit, may preclude a finding of a substantial failure to comply with Rule 11 in a federal securities action.
 
 
 [6]
 If the statutory presumption is overcome, however, the district court "shall" only impose those sanctions that it "deems appropriate" pursuant to Rule 11. § 78u-4(c)(3)(C). In such cases, the award is likely to be limited by the existing practice under Rule 11 which prohibits the inclusion of fees forappellate work related to the Rule 11 sanctions application when those sanctions are intended to award fees and expenses to the moving party. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 407, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (finding that Rule 11 and Rule 38 of the Federal Rules of Appellate Procedure "are better read together as allowing expenses incurred on appeal to be shifted onto appellants only when those expenses are, themselves, caused by a frivolous appeal, and not merely because a Rule 11 sanction upheld on appeal can ultimately be traced to a baseless filing in district court").
 
 
 
 54
 JOHN M. WALKER, Jr., Chief Judge, concurring.
 
 
 55
 I concur in the majority's judgment to vacate and remand in this case. I write separately, however, because there is no need to look beyond the text and structure of the statutory provisions at issue to ascertain their meaning.
 
 
 56
 Because a statute's text embodies the duly enacted law and the final and authoritative expression of the legislative will, our principles of statutory construction emphasize the primacy of the statutory text. See S.E. Cmty. Coll. v. Davis, 442 U.S. 397, 405, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) ("It is elementary that the starting point in every case involving construction of a statute is the language itself.") (alteration, citation, and internal quotation marks omitted). In interpreting Congress's statutory commands, courts should look not simply to the text of the particular provision at issue but also to the framework of the statute and the text of related provisions which provide the context for it. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (stating that "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole"). Read in their statutory setting, the provisions of the PSLRA are clear enough to resolve the issues raised by this case.
 
 
 57
 The majority arrives at its interpretation by what I consider to be less reliable means. Summarily concluding that the text of the statute does not make clear how to treat complaints that raise both frivolous and non-frivolous claims, Maj. Op., supra, at 219, the majority begins its interpretive analysis by inquiring into the underlying purpose of the statute, as revealed by the legislative history, id. at 219-20. This approach seems particularly ironic here given the majority's ultimate conclusion that this case raises "a problem that Congress did not seem to have in mind." Id. at 220. While the legislative history does refer to the general and conflicting policies that were on the minds of some of the congressional committee members, it offers virtually no guidance as to how these vague and general policies should be implemented in particular cases, much less as to how the presumption and rebuttal provisions at issue here should be interpreted.
 
 I. The Invocation of the Presumptive Award
 
 58
 This appeal concerns the proper award of mandatory sanctions under the PSLRA for a complaint that asserts frivolous claims. The statute provides that
 
 
 59
 the court shall adopt a presumption that the appropriate sanction — (i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) ... is an award ... of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and (ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) ... is an award ... of the reasonable attorneys' fees and other expenses incurred in the action.
 
 
 60
 15 U.S.C. § 78u-4(c)(3)(A). The invocation of the presumption in this case thus turns on whether Gurary's complaint "substantial[ly] fail[ed]" to comply with Rule 11(b) within the meaning of subsection (ii).
 
 
 61
 I easily conclude that Gurary's complaint substantially failed to comply with Rule 11(b), notwithstanding the existence of non-frivolous claims. Where, as here, the only potentially non-frivolous claims surfaced, not in the complaint, but later on in an appeal from the motion to dismiss, the complaint substantially (and perhaps wholly) failed to comply with Rule 11(b). Indeed, unless the statutory presumption is to be given no effect, no other conclusion seems possible.
 
 
 62
 Thus I disagree with the majority's contention that the mixture of frivolous and non-frivolous claims in this case raises an issue sufficiently difficult to warrant departure from the text of the statute. Moreover, my conclusion would be the same even if the late-emerging non-frivolous claims had been in the complaint.
 
 
 63
 The majority discerns a gap in the statutory scheme, not by looking to the text of the statute, but by viewing this language through the filter of the legislative history. According to the majority, the statute is incomplete because Congress adopted the "substantial failure" language proposed in Judge Scirica's letter but did not address his concern that an additional modification was necessary to indicate the consequences of a minor offense. Maj. Op., supra, at 220. This interpretation of the legislative history leads the majority to conclude that Congress "did not define clearly what was meant by a `substantial failure.'" Id. However, reliance on Judge Scirica's letter is not necessary because the text is clear; indeed, this approach is troubling for a number of other reasons.[1]
 
 
 64
 Whatever might have led the drafters to adopt the term "substantial," the commonly understood meaning of this term is plain enough. Terms like "substantial" and the related term "material" are common coin of the legal realm. This is particularly true in the context of securities fraud, which is defined in Rule 10b-5 in terms of the "materiality" of the allegedly fraudulent statement, see 17 C.F.R. § 240.10b-5(b) (making unlawful "any untrue statement of a material fact or [the omission of] a material fact").
 
 
 65
 Courts and attorneys would have little difficulty understanding that the "substantial failure" language requires an inquiry into whether the complaint's Rule 11(b) violations make the complaint as a whole "[e]ssentially," "without material qualification," "in the main," or "materially" frivolous. Black's Law Dictionary 1281 (5th ed.1979) (defining substantially). It would also be readily understood that this inquiry requires an evaluation of the factors identified by the majority, that is, the context in which the non-frivolous claims were asserted and the quality of those claims. Maj. Op., supra, at 221-22. Obviously, the legislature cannot draft provisions that account for every situation that might arise, and one can foresee situations in which a finding concerning "substantial failure" would be a tough call. But the difficulty of applying the provisions in some cases does not make the statute unclear. To the contrary, given the case-specific inquiry prescribed by Congress, and the wide range of scenarios likely to arise in this context, see id. at 220, I fail to see how Congress could have spoken more clearly.
 
 
 66
 The text of the PSLRA also leads me to easily conclude that the presumptive award is for the full amount of expenses and not, as appellant contends, for only those costs incurred as a result of the frivolous claims. The presumptive award is for "the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A)(ii). The "in the action" language, which does not distinguish between any parts of the action, plainly commands an award for the entire amount of expenses. This is also made evident from a consideration of the parallel presumptive award provision, the only other subsection commanding a presumptive award. In that provision, the PSLRA prescribes the approach advocated by appellant, but limits it to responsive pleadings and dispositive motions. Id. § 78u-4(c)(3)(A)(i) (providing for an award "for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) ... of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation") (emphasis added). To conflate the two separate provisions, as appellant would in effect have us do, would therefore contravene the oft-repeated canon of statutory construction whereby courts are enjoined to give force and effect to all of a statute's provisions and to avoid rendering any of them superfluous. See Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 145-46 (2d Cir.2002) (collecting cases).
 
 II. The De Minimis Rebuttal Provision
 
 67
 The key to interpreting the de minimis rebuttal provision can again be found in the statute that Congress actually passed. The entire rebuttal provision reads as follows:
 
 
 68
 The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that — (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or (ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.
 
 
 69
 15 U.S.C. § 78u-4(c)(3)(B).
 
 
 70
 When the de minimis rebuttal provision, subsection (ii), is viewed in its statutory context, the problem that so bedevils the majority — avoiding the "paradoxical result... that the presumption is rebutted by evidence that the presumption was inapplicable in the first instance," Maj. Op., supra, at 222 — becomes more manageable. In particular, by viewing the de minimis provision in the context of the statute as a whole and the subsection in which it has been placed, one avoids the trap of considering the provision solely in terms of frivolous versus non-frivolous counts in a complaint. I suspect that the majority's concentration on claims stems from its preoccupation with the legislative history, specifically the reference in the Conference Committee Report to the de minimis provision in connection with a complaint in which only one of twenty counts is frivolous. See id. at 221, 223 n. 3.
 
 
 71
 To be sure, evaluating complaints on a claim-by-claim basis may be a proper application of the de minimis provision in some cases. But it is not the whole picture. Indeed, when the de minimis provision is viewed in light of the design of the statute, it is evident that that provision rebuts the presumption of mandatory sanctions for all of the Rule 11(b) violations listed in subsection (A); these violations may occur not only in complaints but also responsive pleadings and dispositive motions. In the latter cases, where "the failure" of a responsive pleading or dispositive motion to comply with "any requirement of Rule 11(b)" invokes the presumption, the majority's claim-based approach is largely, if not entirely, irrelevant.
 
 
 72
 That a broader understanding of de minimis is appropriate is further indicated by the other rebuttal provision, (B)(i). This rebuttal provision directs the court to weigh the equities of imposing the presumptive mandatory sanctions in terms of whether the award would impose "an unreasonable burden" and would be "unjust" for the sanctioned party, on the one hand, and whether the non-imposition of such an award would not impose "a greater burden" on the non-sanctioned party, on the other. As the majority correctly found, this inquiry is concerned with the fairness of making the sanctioned party pay and its relative ability to do so, given financial or other hardship, and the non-sanctioned party's need to be paid. Id. at 221-22. Such a holistic approach is equally applicable to both responsive pleadings and dispositive motions that simply fail to comply with some requirement of Rule 11(b) as well as to complaints that substantially fail to comply.
 
 
 73
 The de minimis rebuttal provision, subsection (B)(ii), should likewise be read to require that the Rule 11(b) violations be de minimis in the context of the case as a whole. Following the general pattern of its sister rebuttal provision, the de minimis rebuttal provision prescribes the weighing of the sanctioned party's misconduct in, for example, filing a substantially frivolous complaint or a responsive pleading or dispositive motion that violates Rule 11(b), against the rest of that party's conduct in the action and the conduct of the non-sanctioned party. Whereas the first rebuttal provision is primarily concerned with whether the party can pay, the de minimis provision is primarily concerned with whether that party should pay.
 
 
 74
 The de minimis provision, then, allows the rebuttal of the presumption where the presumed mandatory award would be manifestly and egregiously unfair because the sanctioned party's misconduct in a part of the case, the filing of a sanctionable pleading or a dispositive motion, is de minimis in light of that party's conduct and the non-sanctioned party's misconduct considered in the totality of the circumstances surrounding the action. Under this provision, the presumption would be rebutted, for example, where a sanctionable pleading or dispositive motion was met with even worse misconduct by the opposing party or attorney in the other phases of the litigation. It would also be invoked where, in the context of a substantially frivolous complaint, a non-frivolous claim, whether joined in the complaint with many frivolous claims or added later in the action, turned out to win a large money judgment because of defendant's gross misconduct in the events underlying the case.
 
 
 75
 Because of the heightened standards imposed by the rebuttal provision, this reading would not erode the protections provided by the presumption requiring mandatory sanctions for baseless complaints and abusive responsive pleadings and dispositive motions. The de minimis standard means that for the presumption to be rebutted, the equities must weigh very heavily in the favor of the party or attorney against whom sanctions are sought; the sanctionable party's misconduct must pale in significance or culpability in light of the other party's. When applied with its due stringency, the exception would not swallow the rule.
 
 
 76
 I fear the majority's proposed reading of the de minimis provision as it affects complaints fails to give it a meaning that is sufficiently different from the substantial failure provision to harmonize these two provisions. I have difficulty imagining the circumstances under which the majority's examples of possible de minimis violations — a "minor ... procedural flaw in a suit that ... [is] not in itself otherwise abusive" or a complaint in which only one of twenty counts violates Rule 11(b), Maj. Op., supra, at 223 n. 3 — would be found to be complaints (assuming the first example involved a complaint) that substantially failed to comply with Rule 11(b) in the first place. The latter example, which the majority has taken from the legislative history, id. at 221, 223 n. 3, seems to me an instance of misusing legislative history by following it even when it leads to a reading that would render one of the statute's provisions meaningless.
 
 
 77
 In this case, I agree with the majority's conclusion that appellant has failed to rebut the presumption under the "de minimis" rebuttal provision or, for that matter, the "unreasonable burden" and "unjust" rebuttal provision. Here, too, the answer can be gleaned without much difficulty from the plain language of the statute. The PSLRA allows the presumption to be rebutted only where the party facing sanctions provides "proof" that the award would be an unreasonable burden on him and would be unjust or that the violation was de minimis. 15 U.S.C. § 78u-4(c)(3)(B). As the majority points out, the ordinary meaning of unreasonable burden and its placement in the statute indicate a requirement of proof of some financial or similar hardship. Maj. Op., supra, at 221-22. By failing to produce any evidence of such hardship, appellant failed to satisfy this requirement and the district court erred by finding the statutory presumption rebutted on this basis. Similarly, appellant has failed to produce evidence that his substantially frivolous complaint was de minimis, however that provision is interpreted.
 
 
 78
 III. Fees and Expenses Incurred in Pursuing Sanctions
 
 
 79
 With respect to the final issue raised by this appeal, I agree with the majority that "the statutory language can support a reading that permits the fees and expenses incurred in pursuing the sanctions to be included in the award." Id. at 225. Such a result follows from both the ordinary meaning of the text — which provides for an award of "the reasonable attorneys' fees and other expenses incurred in the action," 15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis added) — as well as from the meaning ascribed to similar language as used in similar statutes. See Black's Law Dictionary 26 (5th ed.1979) (defining action to "include[] all the formal proceedings in a court of justice attendant upon the demand of a right made by one person of another in such court, including an adjudication upon the right and its enforcement or denial by the court"); cf. Comm'r, INS v. Jean, 496 U.S. 154, 161-62, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (finding that the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), which provides for an award of "fees and other expenses ... incurred by that party in any civil action," includes an award of expenses incurred in seeking fees); id. at 159, 110 S.Ct. 2316 (noting that the language "in any civil action" does not refer "to separate parts of the litigation, such as discovery requests, fees, or appeals").
 
 
 80
 Accordingly, I respectfully concur in the judgment.
 
 
 
 Notes:
 
 
 [1]
 In referring to Judge Scirica's letter, the majority cites to a Senate debate, not on the "substantial failure" language, but on the level of particularity required in the PSLRA's heightened pleading standardsSee 141 Cong. Rec. S19037-02, S19044-45 (Dec. 21, 1995). Senator Domenici inserted the letter in the record to justify the fairness of this pleading standard in light of President Clinton's veto of a prior version of the bill and in response to a question raised by Senator Specter. Id. at S19044 ("The reason we put in `state with particularity the facts giving rise to a strong inference' is because that is what Judge Scirica, speaking on behalf of the Judicial Conference, asked Congress to do."). After uncovering this comment and the Scirica letter in a remarkable piece of sleuthing, the majority apparently deduces from the comment and the letter, which also recommends the adoption of "substantial" in the presumption, id. at S19045, that "Congress adopted Judge Scirica's `substantial failure' language," Maj. Op., supra, at 220. This bit of drafting lore, which leads the majority to endow the letter with such authority that it can ascribe Judge Scirica's view that a "gap" exists within the meaning of "substantial failure" as somehow binding Congress, is irrelevant as an interpretive matter. Congress passed the provision as drafted, not Judge Scirica's letter, which no doubt few, if any, legislators read. Apart from confusion and misdirection, such use of legislative history raises deeper concerns: the predictability and transparency of the law.