12-3576, 12-3612
Jay Dees Inc. v. Defense Technology Systems Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 27th day of September, two thousand thirteen.

Present:     ROBERT A. KATZMANN,
                         *Chief Judge*,
             DENNIS JACOBS,
             SUSAN L. CARNEY,
                         *Circuit Judges.*
_____

HARRY CATTON, PHILLIP MARKS, STEPHEN KEVELSON, ERIK
KAHN, ROBERT WISSENBACH, JOHN DOES 1-10, JAY DEES INC.,

                    Plaintiffs,

JOHN SCOTTO,

                    Plaintiff-Counter Defendant,

TODTMAN NACHAMIE, SPIZZ & JOHNS, P.C.,

                    Appellant-Cross Appellee,

                    - v -                              Nos. 12-3576,
                                                             12-3612

DEFENSE TECHNOLOGY SYSTEMS INC., DANIEL McPHEE,
PHILLIP RAUSCH,

                         Defendants-Counter Claimants-Cross
                         Defendants,

EDWARD McPHEE,

                    Defendant-Counter Claimant,

DAVID HISCHBERG, ESQ.,

    Defendant,

JOHN BRADY,

        Defendant-Cross Defendant-Counter
        Claimant-Appellee-Cross Appellant.

---

For Appellant-Cross Appellee:     ALEX SPIZZ (Stephen D. Oestreich and Rebecca
                  Hollis, *on the brief*), Todtman Nachamie Spizz
                  & Johns, P.C., New York, NY

For Defendant-Cross Defendant-
Counter Claimant-Appellee-Cross Appellant: RALPH P. FERRARA (Morgan J. Zucker, *on the
                  brief*), Richardson & Patel LLP, Princeton, NJ

---

   Appeal from the United States District Court for the Southern District of New York
(Zilly, *J.*).

   **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

   Todtman, Nachamie, Spizz & Johns, P.C. ("Todtman") and John Brady both appeal from

the February 29, 2012, and August 2, 2012, orders issued by the United States District Court for

the Southern District of New York (Zilly, *J.*) imposing sanctions on Todtman pursuant to Federal

Rule of Civil Procedure 11(b). The district court sanctioned Todtman because its attorney,

Richard Ciacci, filed a Third Amended Complaint that included the objectively unreasonable

allegation that the defendants' securities fraud had caused John Scotto to lose approximately

$500,000. The district court also sanctioned Todtman for presenting frivolous arguments to the

court in an attempt to defend Scotto's claim of loss at summary judgment. On appeal, Todtman

contends that it should not have been sanctioned, while Brady contends that the sanction amount

2

was insufficient. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

First, Todtman contends that Ciacci did not violate Rule 11 by filing either the Third Amended Complaint or the opposition to summary judgment because it was entitled to rely primarily on Scotto's testimony, Scotto's 2004 tax returns, and the purported LH Ross account statement produced by Scotto in discovery. We hold that the district court did not abuse its discretion when it found that (1) Scotto's story was objectively unreasonable and (2) the tax returns and account statement did not even arguably render the story reasonable. We find the district court's analysis of this issue to be persuasive. Todtman contends that the evidence did not foreclose the possibility that Scotto had an account with LH Ross & Company, Inc.; however, Todtman's attorneys should have contacted SAL Financial Services, Inc., to investigate whether it maintains the relevant records before filing either the Third Amended Complaint or the opposition to the defendants' motion for summary judgment. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support." (emphasis added)).

Second, Todtman contends that this case presents "exceptional circumstances" such that "a law firm [need not] be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). Todtman cites *Morris v. Wachovia Securities, Inc.*, Civil Action No. 3:02cv797, 2007 WL 2126344 (E.D. Va. July 20, 2007), which suggests that, under the "exceptional circumstances" provision, "perhaps a firm could get off the hook by

3

raising the defense that a rogue lawyer altered a firm-approved pleading before submitting it or disobediently filed a pleading his superiors had rejected as frivolous." *Id.* at \*5 (brackets omitted) (quoting Ted Schneyer, *A Tale of Four Systems: Reflections on How Law Influences the "Ethical Infrastructure" of Law Firms*, 39 S. Tex. L. Rev. 245, 259 (1998)). Todtman argues that its employee Richard Ciacci, who filed the offending documents here, was just such a "rogue lawyer" because Ciacci paid for the costs of Scotto's case without the firm's knowledge. We disagree. Even if we were to accept the "rogue lawyer" theory suggested by *Morris*, Todtman still has not shown that Ciacci was a rogue attorney with respect to the actions that warranted sanctions here. Todtman does not contend that Ciacci altered a firm-approved pleading. In fact, Todtman does not claim that it disapproved of either the Third Amended Complaint or the opposition to summary judgment—the two papers for which Ciacci and Todtman were sanctioned. Consequently, we hold that "exceptional circumstances" do not apply here and that Todtman is jointly and severally liable for the sanctions against Ciacci.

Third, Todtman contends that the district court's decision to make Todtman's liability joint and several with Scotto's liability was based on the district court's mistaken belief that the collateral posted by John Brady had not yet been disbursed to Scotto. Todtman contends that the district court was under the false impression that the sanctions amount could be taken from that collateral before it was released by the court. We disagree. The district court clearly understood that the collateral had been disbursed to Scotto: It discussed "the $271,817.43 *disbursed from collateral* posted by defendant" and referred to the stipulation and order providing for the disbursement. App'x at 1486 (emphasis added). Moreover, the district court in no way indicated that the sanction—or its joint and several nature—had been imposed based on the understanding that Scotto would be paying the full amount on behalf of both Scotto and Todtman out of the collateral that had been posted by Brady. The district court did not discuss the

4

collateral in the context of Todtman's motion for reconsideration, Todtman's ability to pay, or Todtman's liability more broadly.

We turn now to Brady's cross-appeal. Brady argues that the district court abused its discretion by excluding from the sanctions award all fees incurred prior to the filing of the Third Amended Complaint. We disagree. During the discovery period between the filing of the Second Amended Complaint and the Third Amended Complaint, it became apparent that the accuracy of Scotto's tax returns was subject to serious question. Scotto attributed the relevant losses on his 2004 Schedule D to transactions made through a brokerage firm called "First Providence." At a deposition on December 5, 2006, Scotto claimed that the correct name of the brokerage firm was actually "L.H. Ross or L.H. Roth"—after having been informed that First Providence was out of business at the time of the alleged transactions. At a hearing on June 15, 2007, Judge Scheindlin stated that the case would be referred to the United States Attorney for investigation into possible tax fraud. Then, one week prior to the filing of the Third Amended Complaint, a defense attorney stated at a hearing in Ciacci's presence that a clearing firm for L.H. Ross had no record of an account under Scotto's name. This made any reliance on Scotto's story or on the tax returns objectively unreasonable. "[T]he point at which an argument turns from merely 'losing' to losing *and* sanctionable is often difficult to discern," *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988) (per curiam), and we do not think that the district court abused its discretion in identifying that point as the filing of the Third Amended Complaint.

Brady also argues that the district court abused its discretion when it failed to find "a substantial failure of any complaint to comply with any requirement of Rule 11(b)" pursuant to 15 U.S.C. § 78u-4(c)(3)(A). Brady contends that "[t]he misconduct here thoroughly infected the entire set of plaintiffs' pleadings" because (1) "Scotto claimed to have laid out nearly half of the

5

aggregate funds for the four remaining plaintiffs," (2) "[Scotto's] alleged loss constituted nearly 40% of the aggregate alleged loss," (3) "Scotto was the one who procured the investments from the other plaintiffs," and (4) "[Scotto's] testimony and evidence were the lynchpin [sic] to the other plaintiffs' success." Brief for Brady at 53. But Brady fails to acknowledge that it was only Scotto's *claim of loss*, and not his testimony regarding the fraud more generally, that was the basis for the sanctions here. And this Court has already rejected the argument that Scotto's claim of loss "infected" the entire case. *See Scotto v. Brady*, 410 F. App'x 355, 361 (2d Cir. 2010) (summary order) ("[E]vidence relating to [Scotto's] losses was of extremely limited relevance to the remaining claims and defenses."). "[A] substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive," *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 222 (2d Cir. 2002), and here the district court did not abuse its discretion in finding that the Third Amended Complaint as a whole was not abusive and did not substantially fail to comply with Rule 11.

In addition, Brady contends that the district court abused its discretion by discounting by 35% the attorneys' fees incurred in moving for Rule 11 sanctions. But, in the circumstances presented here, the Private Securities Litigation Reform Act provides only for "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of [a] violation." 15 U.S.C. § 78u-4(c)(3)(A)(i). It was not an abuse of discretion for the district court to conclude that the portion of Brady's sanctions motion requesting that Todtman be required to pay *all* of Brady's attorneys' fees for the entire action—despite the fact that Brady lost at jury trial—was not a "direct result" of the Rule 11 violation but instead was the result of Brady's own misunderstanding of the law.

6

Finally, Brady contends that the district court abused its discretion by excluding from the sanction amount Brady's attorneys' fees incurred during Scotto's prior appeal from the grant of summary judgment on his claim. We disagree. Scotto's appeal was not the "direct result" of Ciacci's allegations at issue in the Third Amended Complaint and the opposition to summary judgment; instead, it was the "direct result" of Scotto's decision to appeal, which was made long after Todtman had withdrawn from the case and ceased to represent Scotto. The district court did not abuse its discretion by concluding that "because Mr. Ciacci had relocated to [another firm] by the time Mr. Scotto was perfecting his appeal, the Todtman firm no longer had control over or responsibility for Mr. Ciacci's actions, and the Court will not hold the Todtman firm liable for such conduct." App'x at 1485 (citation omitted).

We have considered the parties' remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

7