**Ernie DE LA FUENTE, On Behalf of Himself And All Others Similarly Situated, Plaintiffs,**

v.

**DCI TELECOMMUNICATIONS, INC., Joseph J. Murphy, Russell B. Hintz, Larry Shatsoff, John Adams, Schnitzer & Kondub, P.C., Richard S. Kondub, and Ross J. Schnitzer, Defendants.**

**No. 01 Civ. 3365(CM).**

United States District Court, S.D. New York.

May 28, 2003.

238

## ORDER DENYING ALL MOTIONS RELATING TO THE POSTING OF BOND

MCMAHON, District Judge.

On May 5, 2003, this Court awarded sanctions against the law firm of Holzer & Holzer[1] in the amount of $40,000 and against the law firm of Federman & Sherwood in the amount of $83,116.91. Both firms now move, in separate motions, for a stay in enforcement of the award, without the requirement of a supersedeas bond, pending resolution of its appeal to the United States Court of Appeals for the Second Circuit. In the alternative, Holzer & Holzer requests that the Court reduce the amount of the supersedeas bond needed to stay enforcement and Federman & Sherwood requests that in lieu of posting a supersedeas bond the Court allow an alternate form of security.

For the following reasons, all motions are denied.

### Background

Holzer & Holzer and Federman & Sherwood were co-lead counsel for plaintiffs "the de la Fuente group" in a lawsuit against DCI Telecommunications, Inc.; Joseph J. Murphy; Russell B. Hintz; Larry Shatsoff; John Adams; Schnitzer & Kondub, P.C.; Richard S. Kondub; and Ross J. Schnitzer. At the conclusion of the lawsuit, the Court made findings regarding compliance by all parties and attorneys with Fed. R. Civ. Pro. 11(b) ("Rule 11(b)"), as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The Court determined that Holzer & Holzer and Federman & Sherwood violated the requirements of Rule 11(b) by commencing and maintaining the lawsuit. The Court determined that Federman & Sherwood must reimburse defendants for half of the attorneys fees they paid in defending the action, $83,116.91. Following a showing by Holzer & Holzer that a payment of this size would impose an unreasonable burden on them, I awarded sanctions against them in the amount of $40,000. Familiarity with the previous decisions in this case is assumed. *See de la*

---

1. Holzer & Holzer is now doing business as Holzer Holzer & Cannon, LLC.

*Fuente v. DCI Telecommunications, Inc.,* No. 01 Civ. 3365 (May 2, 2003); *de la Fuente v. DCI Telecommunications, Inc.,* 259 F.Supp.2d 250 (S.D.N.Y.2003); *de la Fuente v. DCI Telecommunications, Inc.,* 206 F.R.D. 369 (S.D.N.Y., 2002).

## DISCUSSION

### I. Holzer & Holzer and Federman & Sherwood's Motions For a Stay Without Posting of a Supersedeas Bond is Denied.

Pursuant to Fed.R.Civ.P. 62(d) ("Rule 62(d)"):

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

In the instant case, no exceptions apply. Holzer & Holzer and Federman & Sherwood could obtain a stay as a matter of right under Rule 62(d) by posting a bond to secure the amount of the judgment. 11 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2905, 520 (1995).

Both firms, however, ask that the Court grant a stay of this action without requiring a supersedeas bond. In determining whether to stay a judgment pending appeal, a court must consider (1) whether the petitioner is likely to prevail on the merits of his appeal, (2) whether, without a stay, the petitioner will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest. *Hilton v. Braunskill,* 481 U.S. 770, 777, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Morgan Guaranty Trust Co. v. Republic of Palau,*

702 F.Supp. 60, 65 (S.D.N.Y.1988), *vacated on other grounds,* 924 F.2d 1237 (2d Cir. 1991) (citations omitted). Each of these requirements will be applied flexibly according to the circumstances of each case. *Morgan Guar.,* 702 F.Supp. at 65. Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment. *Palazzetti v. Morson,* 2002 WL 562654 at *3 (S.D.N.Y. April 16, 2002) (citations omitted). The bond requirement should not be eliminated or reduced unless doing so "does not unduly endanger the judgment creditor's interest in ultimate recovery." *Morgan Guar.,* 702 F.Supp. at 65.

Holzer & Holzer argues that all four factors weigh in its favor, and justify a stay. Federman & Sherwood argues that all factors except for the second factor weigh in its favor, and justify a stay. But neither firm meets its burden of persuading the Court that the circumstances of this case justify issuance of a stay without a supersedeas bond.

### A. Neither Firm Has Shown that it is Likely to Prevail on the Merits of its Appeal.

Holzer & Holzer argues that it is likely to prevail on the merits of its appeal for three reasons. Federman & Sherwood joins in one of Holzer & Holzer's three arguments. None of the arguments is persuasive.

> 1. *Holzer & Holzer has not shown that it is likely to prevail in convincing the Second Circuit that this Court misread the amended complaint.*

Plaintiffs' amended complaint consisted of 129 numbered paragraphs, followed by

two general claims for relief—each of which specifically incorporated "each and every allegation set forth above." In the April 23, 2002 decision on defendant's motion to dismiss, the Court interpreted plaintiffs' pleading as alleging thirteen separate violations of the federal securities laws, twelve of which I found to be time barred. Holzer & Holzer now argues that "this Court erred in considering background information in the complaint to be 'claims' it had asserted." Holzer & Holzer argues that "this Court's sanctions order was based upon time-barred 'claims' that Holzer never asserted were actionable, but rather were included in the complaint only for purposes of background."

If this is the ground that Holzer & Holzer intends to assign as the basis for its appeal, it is unlikely to succeed, since the instant stay application is the first time that any of plaintiffs' counsel has asserted that any of the "claims" (actually instances of alleged fraud) were merely "background."

In September 2001, all defendants moved to dismiss all but one of the allegations in plaintiffs' amended complaint as time barred. The DCI Defendants noted that it was unclear how many instances of fraud plaintiffs sought to recover on, but argued that all but one of the alleged frauds were time barred—the one exception being the so-called "Corzon claim." [2]

Plaintiffs did not respond to this motion by stating that the allegedly time-barred transactions mentioned in the complaint were merely "background." Instead, they argued vigorously that they had no knowledge of fraudulent activity of any kind, and could have had no such knowledge, until the SEC filed a complaint against DCI. This made it seem that all the allegedly fraudulent transactions were intended to be a basis for relief.

On April 23, 2002, the Court issued its decision, holding that the twelve instances of fraud other than the Corzon claim were time barred. At that point, any "misapprehension" on the Court's part concerning the gravamen of this action should have been apparent. Significantly, plaintiffs did not move for reconsideration on the ground that the Court had misapprehended plaintiff's complaint. Their failure to do so strongly suggests that the Court did not in fact misinterpret the complaint.

Plaintiffs had another compelling opportunity to make the Court aware of any misreading of their complaint when defendants moved to impose sanctions on plaintiffs and their attorneys in the full amount of attorneys fees and expenses. Defendants argued, *inter alia*, that all of plaintiffs' claims except the Corzon claim (which had by that time been voluntarily dismissed by plaintiffs) were clearly time barred, and further contended that by plaintiffs' arguments for why they were not time barred were not warranted by existing law or by any non-frivolous argument for the establishment of new law. Plaintiffs did not respond to defendants' motion for sanctions by explaining that most or all of the time-barred allegations had been included in the complaint only to provide background information. Neither did they argue that defendants and the Court had misinterpreted the complaint in briefing and deciding the original motion. Rather, plaintiffs argued that their statute of limitations arguments were reasonable and had been advanced in good faith. And in so doing, they affirmatively represented that the time-barred allegations *were* actual claims, stating that: "... in its April 23 Order, this Court dismissed *the majority*

---

**2.** The DCI Defendants thought plaintiffs had pleaded either seven or ten actionable instances of fraud in addition to the Corzon claim. I counted twelve.

*of plaintiff's claims* as barred by the statute of limitation (*sic*)." (Emphasis added).

On February 10, 2003, the Court found that plaintiffs' counsel had indeed violated Rule 11, and that sanctions were appropriate. But I provided all three of the firms involved with plaintiffs' representation with the opportunity to demonstrate to the Court that imposition of attorneys fees—the sanction presumed under the PSLRA under the circumstances—would impose an unreasonable burden on them and would be unjust. Obviously, it would be "unjust" to impose sanctions based on a misapprehension of what the basis for the complaint was. This gave Holzer & Holzer yet another opportunity to clarify that plaintiffs had not intended to assert some or all of the time-barred claims. Again, they did not do so.

If I really had misinterpreted plaintiffs' amended complaint from the beginning, it would have been completely illogical for all of plaintiffs' counsel to refrain from bringing it to the Court's attention—especially when defendants moved for financially significant sanctions. Holzer & Holzer's current argument is inconsistent with all papers plaintiffs have filed in this matter, and I consider it further evidence of a willingness to be disingenuous with the Court when it serves its needs.

In addition to all of this, I note that plaintiffs purported to sue on behalf of a class of persons who bought or sold DCI shares between April 21, 1998 and April 20, 2001. Since the Corzon transaction (the one transaction that was not time barred) took place in November 2000—two and one half years after the commencement of the putative class period—that transaction could not have afforded most of the members of the plaintiff class any basis for recovery. This is further evidence that Holzer & Holzer is engaged in a last-ditch (and post hoc) attempt to re-characterize plaintiffs' amended complaint.

■ Finally, Holzer & Holzer is raising this "misapprehension" argument for the first time on appeal, it is entirely possible that the Second Circuit Court of Appeals will not even consider it. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (recognizing general rule that a federal appellate court will not consider an issue raised for the first time on appeal); *Maska U.S. Inc. v. Kansa Gen. Ins. Co.,* 198 F.3d 74, 79–80 (2d Cir. 1999) (same). It thus affords no basis for an assumption that Holzer & Holzer will prevail on appeal.

> 2. *Holzer & Holzer and Federman & Sherwood have not shown that they are likely to prevail on appeal because sanctions should not have been imposed against them.*

Holzer & Holzer's second argument is that it will prevail on appeal because the mandatory sanctions provision of the PSLRA was "not intended to be applied under these circumstances." Holzer & Holzer fails to explain the basis for its "belief" that the circumstances of this case fall outside the intended scope of the PSLRA sanctions provision. It states that the PSLRA "is relatively new law, and the manner in which its sanctions provision is to be invoked is not yet clear." But while the PSLRA may be relatively new[3], Congress did not suggest that it not be applied immediately upon its passage. Moreover, the PSLRA sanctions provision simply requires that the Court determine whether

---

**3.** I use the word "relatively" advisedly. The statute became effective on December 22, 1995—giving it plenty of time to have seeped into the consciousness of the securities bar before the instant complaint was filed in the spring of 2001.

parties and attorneys have complied with the requirements of Rule 11(b) at the end of every securities litigation covered by the statute. If a Court finds noncompliance, as I did in the instant case, the PSLRA sets up mandatory presumptions regarding the imposition of sanctions. By design, the PSLRA provides the District Court with little room for discretion about imposing sanctions. What discretion I did exercise was in favor of Holzer & Holzer, when I reduced the amount of sanctions against them based on a finding that full attorneys fees would impose an undue burden and would be unjust. Despite Holzer & Holzer's "belief" that the sanctions provision of the PSLRA should not apply to them, the law unambiguously states that it does.

Holzer & Holzer, citing *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157 (2d Cir.1999), argues that if its appeal is successful "it will not be the first time that a district court in the Second Circuit misapplied the PSLRA's sanctions provision and was overturned." Federman & Sherwood bases its argument for why it is likely to succeed on appeal entirely on *DeBartolo.*

The Court is well aware of the *DeBartolo* decision, having cited the case six times in the February 2003 decision. But neither firm explains how the facts and holding of *DeBartolo,* applied to the facts of the instant case, would have compelled a different result. In *DeBartolo,* the Second Circuit found that there were non-frivolous allegations and arguments supporting every element of plaintiff's claim, and that plaintiff arguably had standing, based on existing case law, for bringing the claim. *DeBartolo,* 186 F.3d at 174. Neither firm articulates any factual or legal argument, based on a comparison to *DeBartolo,* upon which the Second Circuit should find that this Court abused its discretion in finding that twelve of plaintiff's thirteen claims

were time barred and nine of those twelve were frivolous.

■ Furthermore, by citing *DeBartolo* in isolation, movants incorrectly imply that the Second Circuit disfavors PSLRA sanctions. A more recent Second Circuit decision, *Gurary v. Nu–Tech Bio–Med Inc.,* 303 F.3d 212 (2d Cir.2002), gives the lie to any such argument, and makes it clear that a District Courts is required to respect and enforce the mandatory presumptions of the PSLRA. When a suit as a whole is abusive, even the presence of non-frivolous claims does not save a party from being subjected to full sanctions. If the District Court fails to impose them, the Second Circuit has demonstrated a willingness to vacate and remand. *Gurary,* 303 F.3d at 226. *DeBartolo* must be read in light of *Gurary.*

In the end, Holzer & Holzer and Federman & Sherwood simply assert that this Court was wrong to impose sanctions against them. This naked assertion of error does not demonstrate a likelihood of success on appeal.

3. *Holzer & Holzer has not shown that it is likely to prevail on appeal because it had no warning that it could be subject to sanctions.*

■ Holzer & Holzer's third argument is that the Court's sanctions order was "incredibly unfair" because Holzer & Holzer "had no indication from the Court, and certainly no warning ... that anything it had submitted might be subject to sanctions." This argument clearly has no chance of success on appeal. The PSLRA applies to every securities fraud complaint, and Rule 11 applies to every pleading, written motion, or other paper that an attorney presents to the Court, in every type of case. The requirements of Rule 11(b) must be met under all circumstances,

and failure to do so always subjects an attorney to the possibility of sanctions. The PSLRA's requirement that the Court specifically determine compliance with Rule 11(b) in securities fraud class actions like this one provided Holzer & Holzer with an explicit warning that it should proceed according to Rule 11(b). Holzer & Holzer is essentially claiming that I did not specifically warn it that it should comply with the Federal Rules of Civil Procedure and governing statutory authority in pursuing its case. To state the argument is to expose its fallacy.

## B. Neither Firm Has Shown that it Will be Irreparably Harmed Absent a Stay.

Holzer & Holzer claims that it will be irreparably harmed without a court-ordered stay, arguing that it has already demonstrated that posting of a bond would be incredibly burdensome to its contingency-fee based practice. But the Court has already made appropriate allowances for Holzer & Holzer's financial situation, by determining that imposition of $83,16.91 in sanctions would be an unreasonable burden and reducing the award to $40,000. Holzer & Holzer produces no new information to compel the Court to reevaluate its determination that sanctions in the amount of $40,000 is appropriate.

Federman & Sherwood concedes that it will not be irreparably injured absent a stay.

## C. Neither Firm Has Shown that Other Parties Will Not Be Substantially Injured by a Stay.

██ Although I noted in my decision of May 5, 2003 that the DCI defendants have represented that the firm is bankrupt and that the individual DCI defendants are uninsured and personally liable for the costs of litigation, Holzer & Holzer argues that none of the defendants in the case has made a showing of financial hardship. Holzer & Holzer asserts that it is illogical to believe that defendants will be harmed by a stay based solely on the fact that "most of the Defendants in this case have employed among the most expensive law firms in New York to defend them." The Court has been provided with no information regarding the fee arrangements between the defendants and their counsel, and will not base a finding of financial good health on the conjecture of Holzer & Holzer.

Federman & Sherwood also focuses on the stature of the defendants' counsel, arguing that the law firms that represented the defendants are "large" with "ample resources at their disposal." Federman & Sherwood then asserts its "belief" that one of these firms has been paid for the services it rendered to the accounting firm defendant. That statement is, of course, pure speculation. But even if it were correct, it would not change the fact that defendants (who incurred the obligation to pay the fees) are harmed by the entry of an unbonded stay, since that compromises their chances of collecting on an eventual judgment against the law firms—at least one of which (Holzer & Holzer) claims to be so financially distressed that it cannot fully bond the judgment. (See below, Point II)

## D. Neither Firm Has Shown that the Public Interest Favors a Stay Under the Circumstances.

██ Holzer & Holzer and Federman & Sherwood both argue that the public interest lies in favor of insuring that small law firms retain capital on hand to continue to fund contingency fee cases, so that those that cannot afford an attorney will have access to the courts. Additionally, they argue that the public interest lies "in limit-

ing the ability of massive law firms from hamstringing small firms by requiring payment pending an appeal."

This Court has determined that Holzer & Holzer and Federman & Sherwood have violated the PSLRA and Rule 11(b), and that sanctions are required. I fail to see where declining to issue an unbonded stay pending appeal hampers the general goal of providing litigants with access to the courts. And there are no "massive law firms" "hamstringing" these two firms. The Court ordered payment of sanctions, and it lies in the Court's discretion whether to stay enforcement of the sanctions pending appeal. Under the circumstances, Holzer & Holzer and Federman & Sherwood's attempt to cast themselves as David fighting for the public interest against the Goliath defendants' counsel is insincere.

Federman & Sherwood recognizes that there is no Second Circuit authority to support its position, and I find that both firms have failed to show that the public interest is served by granting them a stay.

\*   \*   \*   \*   \*   \*

None of the four *Hilton* factors weighs in favor of granting a stay for either firm. The Court thus declines to exercise its discretion to stay the enforcement of sanctions pending appeal without a supersedeas bond. If Holzer & Holzer or Federman & Sherwood wish to stay my judgment of May 5, 2003, they may do so in the standard manner, by posting a supersedeas bond pursuant to Fed.R.Civ.P. 62(d).

## II. Holzer & Holzer's and Federman & Sherwood's Alternative Motions Are Denied.

▇▇ Holzer & Holzer claims that posting a full bond would have severe consequences for its economic health. The burden lies with the moving party to demonstrate why the Court should waive the standard requirement that the appellant post a full supersedeas bond. *Palazzetti v. Morson,* 2002 WL 562654, *3 (S.D.N.Y. April 16, 2002) (citations omitted). As noted above, I have previously made allowances for Holzer & Holzer's financial situation, and reduced the potential sanctions award against it by more than half. Holzer & Holzer has failed to establish that the circumstances of this case justify reducing the amount of the supersedeas bond. *See generally Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1155–56 (2d Cir. 1986), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (allowing posting of a partial supersedeas bond where the Second Circuit found that if the plaintiff was required to post a bond for the entire amount of the approximately $12 billion judgment against it, it would likely force the company into bankruptcy or liquidation and have a severe economic impact on hundreds of thousands of shareholders, employees, and others); *Liberty Mutual Ins. Co. v. Bankers Trust Co.,* 769 F.Supp. 130, 131 (S.D.N.Y.1991) (distinguishing *Texaco* and declining to waive imposition of a supersedeas bond or allow posting of an alternative collateral). I decline to exercise my discretion to reduce the statutory requirement of a full supersedeas bond.

Federman & Sherwood asks that, if I do not waive the requirement of a supersedeas bond, the Court allow the bond to be in the form of an alternate method of security than cash. Specifically, Federman & Sherwood proposes that $83,116.91 in Unites States Treasury Notes be placed in escrow in a federally funded bank as collateral for payment of the Judgment, pursuant to an escrow agreement to be entered into by Federman & Sherwood and defense counsel. Federman & Sherwood has not indicated whether defense counsel has agreed, on behalf of their clients, to

accept such an arrangement; it appears that Federman & Sherwood is asking that I order defense counsel to enter into the proposed escrow agreement provided as Exhibit A to Federman & Sherwood's motion. This proposed agreement requires coordination and cooperation between plaintiffs' counsel and defendants' counsel. If counsel can agree to an alternative form of security, they are welcome to do so, but the Court will not mandate that they reach an agreement.

## CONCLUSION

For the foregoing reasons, Holzer & Holzer and Federman & Sherwood's motions for a stay without posting of a bond are denied. Federman & Sherwood's alternative motion for a bond in the form of an escrow account is denied.

This constitutes the decision and order of this Court.