**Mordechai GURARY, Plaintiff,**

v.

**Isaac WINEHOUSE (d/b/a/ Wall & Broad Equities) and Nu–Tech Bio–Med, Inc., Defendants.**

**No. 97 CIV. 3803(LLS).**

United States District Court,
S.D. New York.

July 10, 2003.

Fox Horan & Camerini LLP, New York City (John R. Horan, of counsel), for Plaintiff's Attorneys David Jaroslawicz and Jaroslawicz & Jaros.

KMZ Rosenman, New York City (Martin E. Karlinsky, of counsel), for defendant Nu-Tech.

## OPINION and ORDER

STANTON, District Judge.

This case is here on remand from the United States Court of Appeals for the Second Circuit for further proceedings consistent with its opinion of August 23, 2002, *Gurary v. Nu–Tech Bio–Med, Inc.*, 303 F.3d 212 (2d Cir.2002). The Court of Appeals held that under the Private Securities Litigation Reform Act ("PSLRA") provision for sanctions, 15 U.S.C. § 78u–4(c)(3)(A)(ii), plaintiff's counsel, David Jaroslawicz, Esq., and the firm Jaroslawicz & Jaros (collectively "Jaroslawicz"), are subject to full sanctions, including appellate expenses. It vacated this Court's decision of August 1, 2001, which had imposed sanctions of approximately half the total reasonable expenses incurred by defendant Nu–Tech Bio–Med, Inc. ("Nu–Tech") in defending the initial action, litigating two appeals, and in pursuing sanctions. *See Gurary v. Winehouse*, 153 F.Supp.2d 489 (S.D.N.Y.2001).

## History of the Case

On February 2, 1998, this Court dismissed plaintiff Gurary's complaint, on defendants' motion, for failure to state a claim of securities fraud. *Gurary v. Winehouse,* 97 Civ. 3803(LLS), 1998 WL 54641 (S.D.N.Y. Feb. 10, 1998). Both sides appealed.

The Second Circuit affirmed the dismissal, *Gurary v. Winehouse,* 190 F.3d 37 (2d Cir.1999), but remanded with respect to sanctions, stating that "the district court made no findings regarding compliance with Rule 11(b)," as mandated by the PSLRA. 190 F.3d at 47.

On remand, I declined to impose sanctions, holding that Gurary could colorably argue that an extension of existing case law supported his Rule 10b–5 causes of action. *Gurary v. Winehouse,* 2000 WL 20706 (S.D.N.Y. Jan.12, 2000). Defendant Nu–Tech appealed.

The Second Circuit affirmed in part, and vacated and remanded in part. *Gurary v. Winehouse,* 235 F.3d 792 (2d Cir. 2000). It held that while sanctions could not be grounded on the non-frivolous, but meritless, claims against Nu–Tech involving Gurary's two stock purchases after the alleged market manipulation began, sanctions were warranted for the frivolous claims based upon his two earlier purchases before the alleged manipulation began; it remanded for determination of appropriate sanctions. 235 F.3d at 800. Gurary petitioned the United States Supreme Court for a writ of *certiorari,* which Nu–Tech opposed, and which was denied. *Gurary v. United Diagnostic, Inc.,* 534 U.S. 826, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001).

On remand from the second appeal, I awarded sanctions against Gurary's lawyer Jaroslawicz and his law firm in the amount of $62,556.28, approximately one half of Nu–Tech's attorneys' fees and costs in the action. *Gurary v. Winehouse,* 153

F.Supp.2d 489, 493 (S.D.N.Y.2001). Relying on *Simon De Bartolo Group v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157 (2d Cir.1999), I found that the failure to comply with Rule 11 was substantial, but because two of the four claims were potentially non-frivolous, imposition of the whole costs and attorneys' fees would impose an unreasonable burden and be unjust. Once again, both sides appealed.

Once again, the Court of Appeals vacated and remanded. *Gurary v. Nu–Tech Bio–Med, Inc.,* 303 F.3d 212 (2d Cir.2002). Its lengthy (16 pages of 303 F.3d) opinion, disposing of the third appeal in this case, addressed the complex problems presented by the statutory provisions (*id.* at 215–16) and concluded that "the presence of some nonfrivolous claims in an otherwise frivolous complaint is not sufficient, standing alone, to establish that either the violation of Rule 11 was de minimis or that the sanctions would create an unreasonable burden, for purposes of overcoming the statutory presumption of the PSLRA." *Id.* at 226. Again, plaintiff's counsel petitioned for a writ of *certiorari,* which Nu–Tech's successor United Diagnostic, Inc. opposed, and the Supreme Court denied. *Gurary v. Nu–Tech Bio–Med, Inc.,* —— U.S. ——, 123 S.Ct. 1583, 155 L.Ed.2d 314 (2003).

## Proceedings on Remand

Nu–Tech's position on this remand is straightforward: the court should (a) comply with the Court of Appeals' decision, by awarding the whole $125,112.57 which my August 1, 2001 decision found to be the total expended by Nu–Tech up to that time, (b) add $68,205.50 for opposing the first petition for *certiorari,* and for the conduct of the third appeal (bringing the total to $193,318.07), and (c) add $21,732.76 for successfully opposing the second petition for *certiorari,* thus awarding a total of

$215,050.83. See its counsel's Dec. 13, 2002 and March 25, 2003 letters to the court.

The first and the last of these items can be determined readily. The simplest is the final item, seeking $21,732.76 for successfully opposing the most recent petition for *certiorari* in the Supreme Court. Nu–Tech applied for that amount in its counsel's March 25, 2003 letter to the court, attaching time and amount records. Over three months have passed since then, and there has been no opposition. The amount is facially reasonable, it is supported by the records submitted, a review of the briefs submitted to the Supreme Court demonstrates the meritorious quality of the work performed, and the amount sought is allowed.

The first item, the total sum of $125,112.57 determined in my 2001 decision (153 F.Supp.2d at 493) will not be reexamined now. It was correct when determined; after hearing a full appeal the Court of Appeals did not alter it; Jaroslawicz has not presented any new fact or argument to alter the determination; and it will not be disturbed at this point.

Mr. Jaroslawicz and his firm oppose, on various grounds, the remaining item: the $68,205.50 Nu–Tech claims it expended in opposing plaintiff's first petition for *certiorari* and in connection with the most recent (third) appeal in the Court of Appeals. All the grounds of opposition have been considered and rejected, but several merit some discussion. They are (1) that Jaroslawicz should be afforded discovery, depositions and a hearing to investigate the reasonableness of the bill, (2) that only amounts actually paid to its counsel by the client should be allowed, (3) that a written retainer, or evidence of the fee understanding with the client, should be produced, and (4) that the amount sought is not shown to be reasonable.

### 1. *Discovery and a Hearing*

Jaroslawicz says that he has no effective way to dispute the billing records submitted unless he can question counsel, either by deposition or before the court. His counsel's December 4, 2002 letter to the court states (p.2):

Without a hearing and an opportunity to question the attorneys involved about the reasonableness and necessity of the time charged there is no effective way to dispute the billing records submitted. A brief description of work done, for example, on an appellate brief, is opaque. Should the appeal have cost over $60,000 of legal time? Without some questioning of counsel there is no way to determine the reasonableness of such a bill.

Accordingly, we request that the court direct defendants' counsel to submit all records of payment and copies of any agreements about the defense of this case and how it is to be billed, and at what rates.

After such production, plaintiff requests an opportunity, either before this court, or by deposition, to examine counsel in order to determine the reasonableness of all fees billed and paid for.

That approach finds no support in the case law, which relies upon the courts' own expertise concerning reasonableness of fees, and provides hearings only where specific fact issues are presented for resolution. As stated in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303–04 (11th Cir.1988):

Courts are often faced with inadequate fee applications or with claims for hours or fee rates which seem excessive. Sometimes, as here, these are supported by opinions as to reasonableness. For decades the law in this circuit has been that:

The court, either trial or appellate, is itself an expert on the question and

may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.

Therefore, where the time or fees claimed seem expanded or there is a lack of documentation or testimonial support the court may make the award on its own experience. Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. Likewise, no additional evidentiary hearing or pleadings are required where fee counsel fails to provide evidence on some factor which it contends the court ought to take into account....

Occasionally, evidentiary hearings are necessary. [describing cases where disputes of fact had to be resolved] These cases should not be read to suggest that an evidentiary hearing is necessary every time the written pleadings present a dispute of opinions on matters as to which the courts possess expertise. Such matters might include the reasonableness of the fee, the reasonableness of the hours and the significance of the outcome.

(citations omitted)

Buttressed by their own competence to resolve issues of reasonableness, courts have required—in consonance with summary judgment practice—a specific factual dispute before ordering a hearing. In *Cunniff v. Westfield, Inc.*, 829 F.Supp. 55, 58–59 (E.D.N.Y.1993) the court stated:

Although Maryland has indicated that a hearing may be required in order to determine the reasonableness of the legal fees incurred by Westfield, it has failed to specify any particular objection to the fees sought. In fact, as Westfield points out, Maryland has been in possession of the pertinent legal bills for well over one year, and has failed to even assert a factual allegation which would suggest that the costs incurred were unreasonable in any respect. Accordingly, there is no basis for Maryland's request.

Expressing rhetorical questions, as Jaroslawicz does ("Should the appeal have cost over $60,000 of legal time?"), does not raise an issue requiring a hearing. As Judge Sweet stated in *Scali, McCabe, Sloves, Inc. v. North River Insurance Co.*, 532 F.Supp. 203, 208 (S.D.N.Y.1981), *aff'd*, 681 F.2d 802 (2d Cir.1981)(table), *cert. denied*, 456 U.S. 976, 102 S.Ct. 2241, 72 L.Ed.2d 850 (1982):

As to ... the necessity of the tasks performed and the reasonableness of the fees charged by Paul, Weiss, ... I find that the defendant has failed to make a showing sufficient to raise a factual issue that would block the granting of summary judgment. "(W)hen a motion for summary judgment is made and supported ... the opposing party may not rest upon mere conclusory allegations or denials." *Markowitz v. Republic National Bank of New York*, 651 F.2d 825, (2d Cir.1981). *See SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). The defendant here has sought to do precisely that. The insurance company has not opposed Scali's summary judgment motion with affidavits, based on first-hand knowledge, setting forth as a matter of fact that the fees charged were unreasonable or the tasks performed unnecessary to the defense of the state court action. Indeed, it has adduced no facts on the basis of which such an inference could be made. Nor has it suggested any reason for its failure to do so. Fed.R.Civ.P. 56(f). Instead, it has sought to withstand Scali's summary judgment motion through con-

clusory allegations of unreasonableness and through a recitation of Paul, Weiss' invoices followed by a string of rhetorical questions such as: "Is such charge for these services reasonable?" "Can this amount, in all seriousness, be considered reasonable?" "Can the amount of such services be considered reasonable?" Conclusory allegations and rhetoric do not raise an issue of fact regarding the necessity or reasonableness of the *Dictaphone* legal expenses sufficient to defeat Scali's summary judgment motion.

> (footnote omitted)

Nor will discovery be ordered, because Jaroslawicz does not point to any reason to believe it would yield useful factual material. A mere desire to investigate, or to conduct an audit, is not enough. As the Court of Appeals stated in an earlier opinion in this very case (*Gurary,* 190 F.3d 37 at 43–44):

> Thus, as we often have said, a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing " '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to greate a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.' "
>
> Indeed, the failure to file such an affidavit is fatal to a claim such as plaintiff makes here even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law.

(citations and source of quotation omitted; bracketed material as in *Gurary* )

Accordingly, Jaroslawicz's requests for examination of Nu–Tech's lawyers, and for a hearing, are denied.

### 2. *Limitation of sanctions to amounts actually paid*

■ The PSLRA requires the court to adopt a presumption that the appropriate sanction "for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u–4(c)(3)(A)(ii).

Jaroslawicz's counsel's Dec. 4, 2002 letter to the court argues that

> The statute states that fees and expenses *"incurred "* shall be the sanction. Incurred means actually sustained; a statement requested, but not actually paid by the clients has not been incurred. Absent evidence of payment, counsel has shown only what it hopes its client will pay.
>
> (emphasis in original)

The notion that "incurred" requires payment is not supported by the dictionaries. They do not require evidence of payment (which would extinguish the liability), but rather stress the presence of a liability. Webster's Third New International Dictionary (Merriam–Webster 1981) says "become liable or subject to: bring down upon oneself (*incurred* large debts to educate his children)"; Merriam–Webster's Tenth Collegiate Dictionary (2000)("to become liable or subject to"); Black's Law Dictionary, Fifth ed. (West 1979)("To become liable or subject to.").

Not only is Jaroslawicz in error about the meaning of "incurred," but Nu–Tech's counsel has informed the court that "In fact, the client or carrier have to this point paid substantially all of the amounts billed." Dec. 13, 2002 letter, p. 2.

### 3. *Retainer Agreement*

Jaroslawicz's counsel asks (his Dec. 4, 2003 letter to the Court, p. 2) that

[T]he court should require production of the retainer agreement, or other evidence of the fee understanding between counsel and his clients or their insurers. If fees have been billed and/or paid in amounts greater than required under an agreement, such excess fees should not be part of the sanction. Or, if there is more than one agreement between counsel and his clients, with different hourly rates, we should see these as well.

Nu–Tech's counsel has replied (his Dec. 13, 2002 letter to the Court, pp. 1–2):

I am not certain I know what his point is concerning a "retainer agreement," but to the best of my knowledge and recollection, neither my old firm nor my present firm ever had a written retainer agreement with this client. (Of course, the initiation of our services for the client pre-date by many years the new requirement under New York practice to obtain such a written agreement.) Rather, the oral agreement between both my old and new firms and this client is that the client was to pay our usual charges in accordance with the billings that we rendered. This is in fact what has occurred over the past five or more years. In the earlier period, we billed the client, and the client remitted payment in due course. In later years, after we first prevailed on appeal in the circuit court after the dismissal of the complaint, our billings went directly to the client's directors and officers liability insurance carrier, and were paid by the carrier. (We have no written agreement with the carrier with respect to the payment of our fees.)

There was nothing unusual or improper in such an arrangement, and its description sufficiently responds to Jaroslawicz's inquiry.

### 4. *Reasonableness of Amount Sought*

The overwhelming majority of the charges composing the $68,205.50 reflect work by Martin E. Karlinsky, Esq., whose total time charges comprise $58,817.50 or 86.2% of the $68,205.50. Except for 12.1 hours of work by an associate at $165 per hour in opposition to the petition for *certiorari*, and 4.4 hours another lawyer spent reviewing briefs at $370 per hour, the rest of the charges reflect work and expenses of clerks, administrative assistants and printers.

Mr. Karlinsky has almost 27 years of active litigation experience in New York City, as associate and a partner in two major firms (Shea & Gould and the Rosenman & Colin firm, now his present firm Katten Muchin Zavis Rosenman, of which he is a senior litigation partner) and was the founding and managing partner of the 60–lawyer Camhy Karlinsky & Stein LLP.

His rate for work opposing the petition for *certiorari* was $525 per hour, which increased to $550 for all but 26.2 of the 71 hours he spent on the Second Circuit appeal. While that rate is substantial, it obtained the services of an experienced and articulate trial and appellate lawyer whose total firm charges for the successful 2001 *certiorari* opposition were approximately $22,500, and for the successful briefing and argument of the third appeal was under $46,000. These sums are not out of line with those of counsel of equal ability and standing for similar matters in this area. They were billed to, and paid by the client and its insurance carrier, over a period of years and without apparent reluctance or objection. Being reasonable in amount for the services performed, they form a proper part of "the reasonable attorneys' fees and other expenses incurred in the action" which the statute requires to be awarded for the complaint's failure to comply with Rule 11(b). 15 U.S.C. § 78u–

432

4(c)(3)(A)(ii); *Gurary*, 303 F.3d 212 at 219 ("full compensation is the proper sanction").

This brings the total awarded to the full amount requested, $215,050.83. That is fair compensation for the conduct of litigation for over five and a half years, consisting of four applications to the district court, three plenary appeals to the Court of Appeals and opposition to two petitions for *certiorari* to the United States Supreme Court, resulting in complete success on a matter of first impression, arising under a new federal statute, whose construction the Court of Appeals found to be complex. The total charged for the total effort falls comfortably within the range of proper charges for the skill involved and for the work performed, and it is unsurprising that Jaroslawicz has submitted no expert opinion that it is excessive.

*Conclusion*

The Clerk will enter judgment requiring David Jaroslawicz, Esq. and Jaroslawicz & Jaros, 150 William Street, New York, New York, jointly and severally, to pay the sum of $215,050.83 to defendant Nu–Tech Bio–Med, Inc., now know as United Diagnostic, Inc., with execution thereon according to law.

So ordered.