Andrew CHIEN, Plaintiff,

v.

**SKYSTAR BIO PHARMACEUTICAL CO. et al., Defendants.**

No. 3:07CV781 (MRK).

United States District Court, D. Connecticut.

Feb. 5, 2009.

Andrew Chien, New Haven, CT, pro se.

Jody M. Borrelli, Richardson & Patel, LLP, Los Angeles, CA, John W. Cannavino, Timothy M. Herring, Cummings & Lockwood, Stamford, CT, for Defendants.

### *RULING AND ORDER*

MARK R. KRAVITZ, District Judge.

On July 17, 2008, the Court granted Defendants' Motion to Dismiss and dismissed this action in its entirely. *See* Ruling and Order [doc. # 71]. Thereafter, Defendants filed a Motion for Sanctions [doc. # 74] against Mr. Chien and his former counsel, Kenneth Votre. Mr. Chien, Mr. Votre, and Defendants all filed briefs in support of their positions. The Court held oral argument on December 11, 2008 on the Motion for Sanctions and allowed the parties until January 23, 2009 to file any supplemental briefing. Mr. Votre filed a supplemental brief on January 23, 2009. *See* Supp. Mem. in Opp'n to Mot. for Sanctions [doc. # 103]. Instead of addressing the Motion for Sanctions, Mr. Chien filed a Motion to Reopen [doc. # 104], requesting the Court reopen his case and permit him to amend his complaint. For the reasons that follow, Defendants' Motion for Sanctions [doc. # 74] is GRANTED in part and DENIED in part and Mr. Chien's Motion to Reopen [doc. # 104] is DENIED.

### I.

Mr. Chien filed this lawsuit on May 17, 2007, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 in connection with a 2005 reverse merger between Cyber Group Network Corporation ("CGPN") and Skystar. *See* Complaint [doc. # 1].[1] Promptly thereafter Defendants—who include former directors and officers of CGPN as well as Skystar—moved to dismiss the Complaint under Rules 12(b)(6) and 9(b) of the *Federal Rules of Civil Procedure* and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b)(1). *See* Defendants' Motion to Dismiss [doc. # 23].

In addition, Defendants filed a Request for Judicial Notice [doc. # 25], which, among other things, requested that the Court take judicial notice of a series of postings on the website ragingbull.com by an individual identifying himself as "andrewchien." Defendants pointed out that, if "andrewchien" was indeed the Andrew Chien in this action, the postings seriously undermined Plaintiff's theory of the case. In the complaint, Plaintiff alleged that Defendants carried out a scheme to deceive the public regarding the fact that the company would severely dilute its stock in connection with the reverse merger in order to satisfy unpaid debts to CGPN's directors. The complaint stated that Mr. Chien bought CGPN stock in reliance of the fact that there would be no dilution and was injured when dilution occurred. Critical to Mr. Chien's theory of fraud was that neither he nor the public knew that dilution would occur until long after the merger took place.

---

1. Mr. Chien's claims are set out at length in the Court's Ruling and Order [doc. # 71] dated July 17, 2008.

However, the "andrewchien" in the raging-bull.com postings appears to anticipate that dilution will occur. In one posting, "andrewchien" states that "the CGPN had $ 1m debt. Is Cramer a generous person? He wants to take most of the pie, or he is willing to give most of it to the shareholders. Time will tell." In another posting, "andrewchien" states that there "[m]ay be some dilution, because the company had some unpaid money to the manager. I hope the dilution will not be huge. Then the stock will reverse after Monday's news." In yet another posting, "andrewchien" writes that "[e]ven there will be some dilution, it still may rally because the new shares are restricted." Defendants argued that if these postings were indeed authored by Plaintiff, then it was apparent that he knew that dilution would occur and that he did not purchase CGPN stock in reliance of the fact that it would not occur as alleged in the complaint.

In accordance with the Court's usual practice, the Court held an on-the-record telephonic conference with counsel for the parties and asked Mr. Chien's counsel, Mr. Votre, if he would like to amend the complaint to address the alleged defects raised in Defendants' Motion to Dismiss. As the Court explained, "It's been my practice to, before briefing begins, see if the plaintiff would like to file, take one last chance to plead, to amend the pleadings to address any of the claims made in the motion to dismiss." Transcript of Nov. 29, 2007 Conference at 2:23–3:1, Defs.' Mem. of Law in Support of Renewed Mot. to Dismiss [doc. # 41] Ex. A. The Court further stated:

> And the reason I do that is the Second Circuit really urges courts, if they're going to dismiss a claim for failure to state a claim, to give the parties a chance to amend, but to me, it doesn't make any sense for me to decide the motion first and then offer a chance to amend. It makes more sense to offer the chance to amend before I decide the motions, and the have the plaintiff put forth whatever additional allegations they feel they can and should make, consistent with their obligations under Rule 11.

> [T]he motion [to dismiss] claims that you have not pled claims with sufficient particularity as required by 9(b) and the PSLRA, and before I decide that motion, I wanted to know if you wanted the opportunity to try to address any of those concerns.

*Id.* at 3:1–17. Mr. Votre stated that he would like to opportunity to amend the complaint and that he "would take [his] best shot at it," to which the Court responded, "Exactly, that's the key." *Id.* at 4:15–18. The Court expressly cautioned counsel as follows:

> Well, I will give you one opportunity to [amend] and so you will want to do as much as you think you need to do consistent with Rule 11 . . . What I don't want to have happen is a situation where you amend, I decide the . . . motion to dismiss, I decide it adversely to you, I don't want you to then say, oh geez, Judge, I have a few more facts to allege . . . .

*Id.* at 4:6–14. The Court then set a schedule for the filing of an amended complaint and denied the Motion to Dismiss without prejudice to renewal "following the filing of an amended complaint that will address to the extent possible, consistent with Rule 11, the alleged defects asserted in the motions to dismiss." Order Denying Motions to Dismiss Without Prejudice [doc. # 31]. The Request for Judicial Notice [doc. # 25] remained pending.

Mr. Chien filed his amended complaint on January 4, 2008, and Defendants then renewed their Motion to Dismiss [doc. # 39]. The amended complaint, with very few additions, was practically identical to the original complaint and did not address the deficiencies raised by the Defendants in their first Motion to Dismiss. At or around the time they filed their renewed Motion to Dismiss, Defendants uncovered additional postings on ragingbull.com by "andrewchien" in which he discusses the instant lawsuit and posts the complaint. In his response to the Request for Judicial Notice, Plaintiff did not deny that the postings were his and instead objected on the grounds that it was not proper for the Court to take notice of the postings in connection with the renewed Motion to Dismiss.

The Court held oral argument on the renewed Motion to Dismiss on July 8, 2008 at which time Mr. Chien was still represented by Mr. Votre. The Court made clear that it did not believe the complaint had any merit:

> To the extent to which I am actually limited to the amended complaint that was filed in response to the motion to dismiss, I honestly don't think there's any question but that [it] has to be dismissed, I honestly don't. It's not adequate.

Transcript [doc. # 98] at 44. The Court also noted that, although the Court would not consider the ragingbull.com postings on the Motion to Dismiss, the Court would consider them on any subsequent sanctions motion. *Id.*

Several days later, Mr. Votre sought to withdraw as Mr. Chien's counsel, *see* Motion to Withdraw [doc. # 62], on the ground that "continued representation of the plaintiff will likely result in the violation of one or more of the Rules of Professional Responsibility, including Rules 3.1, 1.16 and 2.1." *See* Affidavit of Kenneth A. Votre to Withdraw [doc. # 63], ¶ 5. During an in-court conference on July 11, 2008, the Court granted Mr. Votre's Motion to Withdraw, and Mr. Chien, now representing himself, admitted that the postings on ragingbull.com were his and also admitted that he had read and approved of both the original and amended complaints.

On July 17, 2008, the Court granted Defendants' renewed Motion to Dismiss [doc. # 39]. In its Ruling and Order, the Court noted that there were "many defects in the allegations of the Amended Complaint." *See* Ruling and Order [doc. # 71] at 10. The Court focused its opinion on two of these defects: first, that Mr. Chien had not shown that the issuance of new stock to Defendants was withheld from the public, and second, that Mr. Chien had failed to show loss causation. The Court also noted that "[t]he Amended Complaint is noticeably short on facts pleaded with particularity and long on general and conclusory allegations, a defect that would itself be a basis for dismissing the Amended Complaint." *Id.* at 10. Subsequently, Defendants filed a Motion for Sanctions [doc. # 74] against both Mr. Chien and Mr. Votre.

**II.**

The PSLRA provides that "upon final adjudication of [a securities] action, the court *shall* include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(c)(1) (emphasis added); *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 167 (2d Cir.1999) ("Ordinarily, courts are under no particular obligation to make findings with regard to the compliance of litigants and their counsel. This is no longer the case, however, in the securities litigation context." (citation omitted)). It further dictates that "[i]f the court makes a finding ... that a party or attorney violated any requirement of Rule 11(b) ... the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(c)(2) (emphasis added). In other words, the PSLRA "requires ... that the court impose sanctions if it determines the rule has been violated." *Simon DeBartolo,* 186 F.3d at 167. "The PSLRA does not in any way purport to alter the substantive standards for finding a violation of Rule 11, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found." *Id.*

Thus, the first inquiry under the PSLRA is whether there has been a Rule 11(b) violation. Rule 11(b) states in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically

so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery....

■ Sanctions for the legal insufficiency or frivolousness of the complaint must run against the attorney alone. *See* Fed. R. Civ. Pro. 11(c)(5) ("The court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2)."); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir.2001) ("Rule 11 does not permit sanctioning a client, however, when the basis for the sanction is that the pleading was legally frivolous."); *Baffa v. Donaldson*, 222 F.3d 52, 57 (2d Cir.2000) ("The district court also cannot order sanctions for violation of Rule 11(b)(2) against a represented party."). However, both a represented party and his attorney may be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint. *See Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986) ("[A] sanction for attorneys' fees may be imposed either on the attorney who signs a paper, or on the party he represents, or on both."); *Simpson v. Putnam County Nat'l Bank*, 112 F.Supp.2d 284, 291 (S.D.N.Y.2000) (same). Defendants claim that the original and amended complaints were legally and factually frivolous and that sanctions should run against both Mr. Votre and Mr. Chien.

### A.

■ The Court first considers whether the original and amended complaints violated Rule 11(b)(2), which would run against Mr. Votre alone. In order for a claim to violate Rule 11(b)(2), a pleading "must be or border on the frivolous." *Healey v. Chelsea Resources Ltd.*, 947 F.2d 611, 626 (2d Cir.1991); *see also id.* ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success."); *Gurary v. Nu–Tech Bio–Med, Inc.*, 303 F.3d 212, 224 (2d Cir.2002) (using frivolousness as relevant standard under Rule 11(b)(2)).

■ The standard for triggering the award of fees under Rule 11(b)(2) is "objective unreasonableness." *Margo v. Weiss*, 213

F.3d 55, 65 (2d Cir.2000); *see also Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1470 (2d Cir.1988); *Storey v. Cello Holdings, L.L.C.*, 182 F.Supp.2d 355, 365 (S.D.N.Y.2002). There is no " 'empty-head pure-heart' justification for patently frivolous arguments" under Rule 11. *See Simon DeBartolo*, 186 F.3d at 166. The subjective intent of the filer is irrelevant. *See Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir.1994). "Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith ... provides [no] safe harbor." *Id.* (citations and quotation marks omitted).

■ The Court is cognizant of the fact that "[i]n determining whether or not a claim was totally unfounded, the courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Healey*, 947 F.2d at 626 (citation and quotation marks omitted). However, even giving the benefit of the doubt to Mr. Votre, the Court concludes that both the original and amended complaints were frivolous. As the Court explained in its Ruling and Order granting the renewed Motion to Dismiss, both complaints failed to plead fraud with any semblance of the particularity required under Rule 9(b) of the *Federal Rules of Civil Procedure*. And at least with respect to the theory of fraud alleged in the complaints, it is fair to say that the complaints failed to allege any fraud at all. All of the alleged material omissions— i.e. the fact that Defendants would own a majority of the shares after the merger and that the merger would be accomplished through the issuance of new shares to Defendants—were contained in the September 2005 8–K, the filing that allegedly contained the material omissions.

Moreover, and more troubling, the complaints omitted key facts that were necessary to state a successful claim. For instance, the complaints do not state when Mr. Chien purchased his shares,[2] how much he paid for

---

2. The amended complaint does state that Mr. Chien purchased his shares from "approximately

the end of September 2005 to November 4, 2005," *see* Am. Compl. [doc. # 35] at 8, ¶ 5, but

them, or whether he ever sold them, all facts that are critical for pleading loss causation.[3] Mr. Chien later stated in the sur-reply that he purchased the shares for approximately $5.00 a share, although he does not explain, and the Court cannot understand, how he arrived at this figure given the fact that shares fluctuated between $1.50 a share to $4.50 a share during this time period. Regardless, this information should have been included in the pleadings, not in the sur-reply.

Finally, after dipping a bit in the month after the merger, the stock again rose to approximately $4.00 before declining over the course of two years. At oral argument, Mr. Votre could not explain to the Court how Defendants' fraud could possibility have caused Mr. Chien's loss if the stock prices actually rose in the months after the fraud was allegedly exposed. At the point at which Mr. Chien sold his shares, which was apparently shortly after the oral argument on the renewed Motion to Dismiss, almost three years had passed since Mr. Chien had purchased his shares, during which time several large Wall Street firms had collapsed, a mortgage crisis had unfolded, and the stock market had entered a period of precipitous decline. In such a situation, it was impossible to show that the alleged fraud perpetrated in September 2005 was the cause of Mr. Chien's loss. The Court could go on about the impossibilities and logical inconsistencies contained in the complaints,[4] but the examples cited above are sufficient for the Court to find that the complaints lacked any merit whatsoever and can properly be deemed frivolous.

It is clear to the Court that Mr. Votre, who did not have much, if any, experience with securities law cases, did not purposefully file a frivolous complaint and honestly believed that he had stated a valid claim on behalf of his client. However, as explained above, there is no "empty-head pure-heart" justification for a Rule 11 violation. Rule 11 assumes a competent attorney, *see Eastway Constr. Corp. v. New York,* 762 F.2d 243, 254 (2d Cir.1985), and although the Court does not judge Mr. Votre's competence as an attorney in general, it is clear that he did not perform due diligence before bringing this case. The original and amended complaints fall far wide of well-established Supreme Court and Second Circuit precedents as well as the statutory language itself; this is not a case where counsel missed an obscure unreported district court opinion that informed the Court's decision or where the inadequacy of the complaint is apparent only in hindsight.

The Court has even less sympathy for Mr. Votre because the Court gave him a chance to fix the defects in his original complaint and he failed to do so, even though Defendants had already raised the possibility of sanctions. Certainly after Defendants filed their first Motion to Dismiss, Mr. Votre was on notice that the original complaint contained serious deficiencies and that he should either work to address those deficiencies or withdraw the complaint. Instead, he filed an amended complaint that was basically identical to the original complaint. He made no effort whatsoever to address the defects to which Defendants had alerted him.

Nor does the Court believe that Mr. Votre can legitimately argue that the complaints were premised on "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R.Civ.P. 11(b)(2). For example, Mr. Votre

---

this information was not sufficient to make out a claim because when Mr. Chien purchased his shares within this period was essential for determining whether the purchase took place before or after the alleged fraud.

3. The Court is well aware that the element of loss causation is not subject to the heightened pleading standard of Rule 9(b) of the *Federal Rules of Civil Procedure. See Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). However, the amended complaint failed to plead loss causation even

under the lower pleading standard found in Rule 8.

4. In one particularly befuddling example, Mr. Votre argued that Mr. Chien had sustained a loss from the sale of some of his stock that occurred before the alleged fraud had become public. How a fraud that nobody knew about would cause the stock price to drop is a mystery to the Court, and apparently is also a mystery to Mr. Votre given his inability to provide any cogent explanation at oral argument.

could not honestly have been attempting to extend or modify the existing definition of loss causation so that it required neither loss nor causation. And besides, Mr. Votre does not make this argument. *See Gurary v. Winehouse*, 235 F.3d 792, 799–800 (2d Cir. 2000) ("Although litigants are not required to articulate their arguments for legal change, they fail to do so at the risk that a court may be unable to supply one sua sponte." (citations omitted)).

Therefore, while the Court would prefer to rule otherwise, it has no choice but to conclude that the complaints were legally frivolous in violation of Rule 11(b)(2).

#### B.

Next, the Court considers whether the complaints violated Rule 11(b)(3), which would permit sanctions to run against both Mr. Chien and Mr. Votre. Defendants' main argument with respect to Rule 11(b)(3) is that some of the allegations in the original and amended complaints contradict Mr. Chien's ragingbull.com postings, leading Defendants to conclude that the complaints contained material falsehoods.

For instance, the amended complaint states that Defendants "caused the ownership interest of Plaintiff Chien to be diluted, and intentionally, recklessly and negligently concealed that dilution from Mr. Chein [sic] and others, by the issuance of large numbers of unregistered shares to insiders, causing him a direct economic loss." Am. Comp. [doc. # 35] at 2, ¶ 1. The amended complaint also states that "[a]s a result of the Plaintiff's reliance on the representations made by the Defendants [that there would be no dilution], the Plaintiff purchased shares in the Defendant Company and retained those shares not expecting a dilution of his interest." Am. Compl. [doc. # 35] at 16, ¶ 37.

However, according to the ragingbull.com postings, which Mr. Chien admitted were his, Mr. Chien did know—or at least strongly suspected—that dilution would occur and

that it might be substantial. Statements such as "there will be some dilution" and there "[m]ay be some dilution because the company had some unpaid money to the manager" cannot be interpreted in any other way. Mr. Chien argues that he knew that some dilution might occur, but did not know that his shares would be diluted to the extent that they were. But, of course, the amended complaint does not state that there was more dilution than he expected. Instead, it states that Mr. Chien did not expect any dilution at all. And that statement is simply not true.

■ Mr. Chien also argues that regardless of whether he knew dilution would occur, Defendants still withheld material information from him and the public. As explained above and in the Court's previous Ruling and Order [doc. # 71], the Court rejects the argument that the Company withheld this information. But even if it were true, Mr. Chien would still need to show transaction causation, or that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir.2005). According to the ragingbull.com postings, Mr. Chien was aware that dilution would occur and yet took the risk of dilution and purchased the stock anyway, apparently hoping that "it still may rally because the new shares are restricted." Given the ragingbull.com postings, it is clear that Mr. Chien did not rely on the alleged omissions by the Company. Thus, the Court concludes that both the original and amended complaints contained material falsehoods in violation of Rule 11(b)(3). *See Calloway v. Marvel Entm't Group, Div. of Cadence Indus. Corp.*, 854 F.2d 1452, 1474 (2d Cir.1988) (finding sanctions are appropriate when "the paper made false statements").[5]

The next question is whether the violation should run against Mr. Chien, Mr. Votre, or both. Mr. Chien admitted that he read and approved both the original and amended

---

5. Mr. Votre points out that under Second Circuit case law, sanctions are unwarranted when the court does not give the plaintiff a chance to fill in the deficiencies in his complaint through discovery. *See Commercial Cleaning Serv., L.L.C. v.* *Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir.2001). However, in this case, Mr. Chien was in possession of the relevant information and no amount of discovery would have corrected the material falsehoods in the amended complaint.

complaints, so it is clear that Mr. Chien is at least partially responsible for the Rule 11(b)(3) violation. *See Calloway*, 854 F.2d at 1474 (noting that a represented party should be sanctioned he had knowledge of false statements). Although Mr. Chien may not have understood the legal consequences of the material falsehoods, he did know that at least some dilution would occur, which directly contradicts statements about dilution in the original and amended complaints.

■ Whether Mr. Votre should also be sanctioned under Rule (b)(3) is a closer question. Generally, "where the client misleads his attorney and thus causes him to file frivolous papers, it is apparent that the client, not the attorney, should be sanctioned." *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 569 (E.D.N.Y. 1986), *modified*, 821 F.2d 121 (2d Cir.1987), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). However, "where the party does know that the filing and signing is wrongful and the attorney reasonably *should know*, then sanctions against both are appropriate." *Calloway*, 854 F.2d at 1474.

■ An attorney "is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir.1995). However, the attorney must still engage in "an inquiry reasonable under the circumstances." Fed.R.Civ.P. 11(b). Given this standard, the Court believes that Mr. Votre had no reason to doubt the factual accuracy of the original complaint at the time it was filed. According to Mr. Votre's affidavit, Mr. Chien did not inform him prior to the filing of the original complaint that he had posted to ragingbull.com concerning dilution. *See* Kenneth Votre Aff. in Opp'n to Sanctions [doc. # 89], ¶ 13. And the Court does not believe that Mr. Votre had a duty to inquire about possible postings *sua sponte* without some indication that such postings existed. Once Defendants filed their Request for Judicial Notice [doc. # 25], however, Mr. Votre had an obligation to ask his client whether the postings were his. And, in fact, Mr. Votre stated at oral statement that he asked Mr. Chien about the postings shortly after

Defendants filed their Request for Judicial Notice, and that Mr. Chien admitted at that point that he had authored the postings. Yet, after Mr. Votre discovered that there were falsehoods in the original complaint, he neither sought to amend the complaint to correct the falsehoods, nor did he seek to withdraw the complaint or, alternately, to withdraw as Mr. Chien's counsel. Instead, Mr. Votre filed an amended complaint that contained the same falsehoods and continued to advocate for the amended complaint for *eight long months before moving to withdraw* as Mr. Chien's attorney.

Mr. Votre would like the Court to believe that he withdrew as soon as he discovered that the complaint contained falsehoods. He points to the fact that Defendants did not disclose the postings in which Mr. Chien discussed the complaint until April 2008, at which point he sought Mr. Chien's permission to try to settle the case. However, the additional postings discovered by Defendants in April 2008 say nothing about dilution or any of the other factual allegations in the complaint. As to the postings regarding the complaint, Mr. Chien was well within his rights to post publicly-available documents and to discuss lawsuits to which he is a party. The Court admits, as Mr. Votre argued at oral argument on the Motion for Sanctions, that commenting on an ongoing case was perhaps not the most prudent thing for Mr. Chien to do. That issue, however, is separate from whether the complaint as filed contained material falsehoods.

Instead, the additional postings merely lent further support to Defendants' contention that "andrewchien" was in fact the Plaintiff in this case, which until Mr. Chien's admission in July 2008 remained unconfirmed. Of course, it may have caused Mr. Votre added anxiety that Defendants now had almost incontrovertible proof that Mr. Chien was the author of the ragingbull.com postings. But nothing in the additional postings gave Mr. Votre any information that he did not already have in November 2007 when he first asked Mr. Chien about his postings. The Rule 11 violation occurred when Mr. Votre filed the amended complaint on Mr. Chien's behalf knowing that it contained ma-

terial falsehoods, not when he learned that Defendants had proof of the violation. Besides, if Mr. Votre realized in April 2008 that the amended complaint contained material falsehoods and Mr. Chien refused to give him permission to amend the complaint, the appropriate course of action was for Mr. Votre to withdraw as Mr. Chien's attorney at that point, not to wait another three months until after oral argument on the renewed Motion to Dismiss.

Mr. Votre also argues that he did not believe that Mr. Chien's postings were fatal to the case because Mr. Chien had told him that his musings about dilution were simply idle chatter and had no basis in reality. Thus, he contends that the postings were simply irrelevant to the factual allegations in the complaint. Mr. Votre continued to make this argument at the oral argument on the Motion for Sanctions, despite the fact that he had already withdrawn as Mr. Chien's counsel. However, in his affidavit, Mr. Votre states that after the oral argument on the renewed Motion to Dismiss, he "recognized Chien could not truthfully testify that he did not know of the dilution." *See* Kenneth Votre Aff. in Opp'n to Sanctions [doc. # 89], ¶ 35. Likewise, in his Supplemental Memorandum in Opposition to the Motion for Sanctions [doc. # 103], Mr. Votre states that "[h]e did not learn of certain untruths by Chien until he moved to withdraw as counsel for Chien in this action." *Id.* at 8.

In short, Mr. Votre wants it both ways, arguing both that no violation of Rule 11(b)(3) occurred and that as soon as he realized that a violation occurred, he withdrew from the case. The Court does not accept that Mr. Votre had an epiphany at oral argument on the renewed Motion to Dismiss that caused him to suddenly disbelieve Mr. Chien's explanation of the postings. There was no new information disclosed at oral argument that had any bearing on the factual insufficiency of the amended complaint, or the untruths alleged in it, that Mr. Votre did not have in his possession as of November 2007.

To put it bluntly, the Court is not impressed that Mr. Votre waited until it was clear that the Court was going to grant the renewed Motion to Dismiss and was going to consider the ragingbull.com postings on any subsequent motion for sanctions before deciding to withdraw as Mr. Chien's counsel. The Court appreciates the fact that Mr. Votre was dealing with a difficult client and that he did take steps to remedy the situation, including seeking Mr. Chien's permission to settle the case and to amend the complaint. But this was not sufficient to avoid a violation of Rule 11(b)(3). If Mr. Chien would not give Mr. Votre permission to either amend or withdraw the complaint, Mr. Votre should have moved to withdraw as Mr. Chien's counsel within a reasonable time. The Court therefore concludes that sanctions under Rule 11(b)(3) should run against both Mr. Chien and Mr. Votre for the factual insufficiency of the amended complaint.

### III.

■ Having found a violation of Rule 11(b)(2) and (3), the Court now turns to the issue of sanctions under the PSLRA, which puts in place the presumption that the appropriate sanction is full attorney's fees and expenses if the Rule 11 violation was "substantial." *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii). In deciding whether a violation of 11(b) is "substantial," the Second Circuit has stated that once the court concludes that a frivolous claim has been brought in violation of Rule 11(b)

> the court must examine whether nonfrivolous claims have been joined and, if so, whether these claims—whatever their number—are of a quality sufficient to make the suit as a whole nonabusive and the Rule 11 violation not substantial. If no weighty nonfrivolous claims are attached, the statutory presumption applies.

*Gurary*, 303 F.3d at 223. The presumption of full attorney's fees and expenses may be rebutted if the court finds that the violation was *de minimis*. *See id.*; 15 U.S.C. § 78u-4(c)(3)(B)(ii). Alternatively, the presumption may be rebutted by showing that "the award of attorneys' fees and other expenses will impose an unreasonable burden on [the sanctioned] party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the

party in whose favor sanctions are to be imposed." 15 U.S.C. § 78u–4(c)(3)(B)(i).

█ The Second Circuit in *Gurary* recognized that there was tension in the statutory text between a substantial and a *de minimis* violation, observing that "de minimis must mean something different from 'not substantial.'" *Gurary*, 303 F.3d at 223 n. 3. Because the violation in *Gurary* was substantial, the Second Circuit did not decide what would constitute a *de minimis* violation, although it did opine that a *de minimis* violation might "refer to a minor Rule 11–violative procedural flaw in a suit that, though not in itself otherwise abusive, has no saving merit" or might refer to a case in which "of, say, twenty counts, one violates Rule 11 while nineteen do not (but are of little or no work), that a court would deem the violation substantial and yet, echoing the PSLRA's legislative history, find the violation de minimis." *Id.* Even if the Court determines that the Rule 11 violation is not substantial, or determines either that it was *de minimis* or that a full sanctions award would create an "unreasonable burden," the Court must still award partial sanctions "to punish the party that brought the frivolous claims." *Byrne v. BuyThisFast Network, Inc.*, No. 03 Civ.1999, 2005 WL 1155175, at *5 (S.D.N.Y. May 17, 2005) (citing *Gurary*, 303 F.3d at 220).

In this case, the complaint alleged only two claims— §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a). As explained above, the § 10(b) claim was frivolous. The § 20(a) claim was premised on an underlying violation of § 10(b) and hence was also frivolous. *See* Ruling and Order [doc. # 71] at 19 ("In order to state a cause of action under § 20(a), a plaintiff must plead, among other things, a primary violation by a controlled person."). Because "no weighty nonfrivolous claims are attached," the violation of Rule 11(b) is substantial and the statutory presumption of full attorney's fees and costs applies. *Gurary*, 303 F.3d at 223.[6]

█ The Court further concludes that the Rule 11(b) violation was not *de minimis*. The complaint did not suffer from a minor procedural flaw. Instead, it failed to plead at least two of the five elements of a securities fraud action and contained material falsehoods that called into question a third element. And again, the complaint does not make other non-frivolous claims that might otherwise qualify the violation as *de minimis*.

█ However, the Court concludes that a full award of attorney's fees would be an "unreasonable burden" on both Mr. Chien and Mr. Votre. Mr. Votre runs a small law firm that employs only four other employees besides himself. *See* Aff. of Kenneth Votre [doc. # 103–2], ¶ 11. He is the sole provider for his wife and four children, *see id.*, and represented at oral argument on the Motion for Sanctions that an award of full attorney's fees and expenses in this action would constitute a significant hardship; the Court accepts that representation. Likewise, Mr. Chien at oral argument stated that he had limited ability to pay any sanctions at all. The Court does not believe that awarding partial attorney's fees would impose a greater burden on Defendants than it would on Mr. Chien and Mr. Votre. At the very least, Defendants have put nothing in the record to suggest that awarding partial attorney's fees would impose a substantial burden on them.

Furthermore, the Court believes that an award of full attorney's fees in this case would be unjust. Defendants seek $ 121,-971.35 in attorney's fees and costs. Although the Court understands the complexity of the issues presented and the amount of briefing required, the Court simply does not understand how Defendants managed to spend $ 121,971.35 defending what Defendants claim—and the Court agreed—was a patently frivolous lawsuit. This is especially the case since Mr. Chien only sought $ 52,766.77 in damages, and the parties did not take any

---

6. Nor can Mr. Votre and Mr. Chien avoid a finding of a substantial violation by claiming that there were other possible claims that they could bring if they were allowed to amend the complaint a second time. *See Gurary*, 303 F.3d at 224 ("[T]he legal strength, or lack thereof, of [a] possibly cognizable claim that was not presented in the complaint, and that was itself unlikely to succeed on the merits, cannot suffice to relieve the present complaint from being an unfounded action *as a whole.*" (emphasis in original)).

discovery because the motion to dismiss stayed discovery under the PSLRA. As an example of what the Court views as excessive fees, Defendants' local counsel accrued $ 21,-890 in attorney's fees in addition to the $ 93,-408.75 expended by Defendants' lead counsel. The Court does not find this a reasonable amount of fees for local counsel to have expended on this case.

Moreover, the Court believes it would be unjust to award Defendants' attorney's fees for the preparation and filing of the first Motion to Dismiss. At least in terms of Rule 11(b)(3), the Court has determined that Mr. Votre did not commit a violation with respect to original complaint. And the Court did give Mr. Votre a chance to correct the legal defects by denying the Motion to Dismiss without prejudice. If Mr. Votre had corrected the defects at that point, or had withdrawn the complaint, the Court does not believe that the parties would be where they are today.

Finally, $ 8,551.50 of lead counsel's fees accrued after Mr. Votre moved to withdraw as counsel an were incurred in connection with Mr. Chien's Motion to Correct/Amend, the subsequent briefing on jurisdiction, and on Mr. Chien's appeal to the Second Circuit.[7] The Court does not believe that including this $ 8,551.50 in the sanctions award would be just. Mr. Votre surely cannot be held responsible for fees that accrued after he withdrew as Mr. Chien's counsel and the Court is certain that Mr. Chien did not know what he was doing when he filed both a Motion to Amend and a Notice of Appeal, which precipitated another round of briefing on jurisdiction.

Subtracting $ 14,762.50 for the filing of the first Motion to Dismiss and $ 8,551.50 for the post-July 11, 2008 fees, lead counsel's fees are left at $ 70,094.75 and $ 6,008.45 for expenses. As explained above, the Court considers even this figure far too high for what the case involved and the briefing required. It therefore cuts lead counsel's fees to $ 60,-000 and $ 3,000 for expenses. It further cuts local counsel's fees to $ 5,000 and $ 500 in expenses. Altogether, the Court is left with reasonable attorney's fees and expenses in the amount of $ 68,500.

In order to take into account the unreasonable burden that such an award would have on Mr. Votre and Mr. Chien, the Court further discounts this amount by 50% to $ 34,-250. The Court is comfortable that this amount adequately punishes the violation and will deter future frivolous lawsuits by both Mr. Votre and Mr. Chien. Moreover, although it does not excuse the violation itself, the Court believes it appropriate to take into account the fact that Mr. Votre did not act in bad faith and that Mr. Chien, whose facility with the English language is not great, may not have entirely understood the consequences of what he did.

Although it is difficult to make such a determination, the Court concludes that violations of Rule 11(b)(2) and (b)(3) contributed equally to the overall Rule 11(b) violation and that Mr. Votre and Mr. Chien were roughly equal in their responsibility for the Rule 11(b)(3) violation. Therefore, the Court awards a sanction in the amount of $ 17,125 for the Rule 11(b)(2) violation and in the amount of $ 8,562.50 for the Rule 11(b)(3) violation against Mr. Votre for a total of $ 25,687.50. The Court awards a sanction in the amount of $ 8,562.50 against Mr. Chien for his part of the Rule 11(b)(3) violation. The Rule 11(b)(3) award is several and not joint. Accordingly, the Court GRANTS Defendants' Motion for Sanctions [doc. # 74] insofar as it seek sanctions against Mr. Votre and Mr. Chien and DENIES Defendants' Motion insofar as they seek $ 121,971.35 in attorney's fees and costs.

## IV.

Finally, the Court considers Mr. Chien's Motion to Reopen [doc. # 104], in which he seeks to reopen the case and amend the complaint to add new claims that Mr. Chien feels that Mr. Votre failed to raise. As the Court explained to Mr. Chien in response to his previous Motion to Amend [doc. # 73],

7. The Court will not subtract the fees expended in the briefing and arguing of the Motion for Sanctions [doc. # 74], which the Court believes should rightly run against Mr. Votre and Mr. Chien.

the Court does not believe that it has jurisdiction over Mr. Chien's claims at this time, although the Court does retain jurisdiction to rule on the Motion for Sanctions. *See* Ruling and Order [doc. # 90] at 5. This is so because Mr. Chien filed a Notice of Appeal of the Court's Ruling and Order [doc. # 71] dated July 17, 2008, and the Court cannot exercise jurisdiction concurrently with the Second Circuit. *See* Ruling and Order [doc. # 90] at 5 ("Because the Court cannot say with certainty that Mr. Chien's appeal is a 'frivolous' or 'plainly unauthorized,' the Court does not believe it has jurisdiction to decide his Motion to Correct/Amend.").

Moreover, the Court notes that Mr. Chien has filed another lawsuit against Defendants that alleges many of the claims he wishes to add here and that the case has been removed from the Judicial District of New Haven to this Court. *See Chien v. Skystar Bio Pharmaceutical Co.*, 09–cv–149 [doc. # 1]. Therefore, the Court DENIES Mr. Chien's Motion to Reopen [doc. # 104].

### V.

In conclusion, the Court GRANTS in part and DENIES in part Defendants' Motion for Sanctions [doc. # 74] and DENIES Mr. Chien's Motion to Reopen [doc. # 104]. The Court sanctions Mr. Votre in the amount of $ 25,687.50 and Mr. Chien in the amount of $ 8,562.50. Mr. Votre and Mr. Chien shall pay the above amount to Defendants by **April 6, 2009.**

IT IS SO ORDERED.